## MARY A. FRAZIER *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 13, 1901. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Railroad,* Liability when compelled by statute to use station of another.

The rule laid down in *Littlejohn* v. *Fitchburg Railroad,* 148 Mass. 478, 481, that a railroad company is liable to a passenger injured by the negligence of another railroad company over whose tracks the defendant has undertaken to carry and then is carrying him, approved, and *semble,* that the same rule would be applied in the case of the use of a station of another railroad company.

The railroad companies compelled by St. 1896, c. 516, § 9, to use the south terminal station in Boston are not liable to a passenger injured by stumbling over an obstruction on the floor of the station after he has alighted from a train and is passing through the station on his way to the street.

TORT for injuries caused by the plaintiff stumbling over a wooden platform about sixteen feet square raised from four to eight inches above the concrete floor of the station of the Boston Terminal Company in Boston after the plaintiff had alighted from a train of the defendant and was passing through that station on her way to the street.    Writ dated October 5, 1899.

In the Superior Court, before *Sherman,* J., it appeared, that the station was owned and operated under the provisions of St. 1896, c. 516.    The judge ruled, that the plaintiff could not maintain her action, on the ground, that under the statute the defendant owed no duty to the plaintiff at the place where she fell and

was injured, as the defendant was compelled by the statute to use the station, and had no control of it, and directed the jury to return a verdict for the defendant. This was done, and at the request of the parties the judge reported the case for the determination of this court. Judgment was to be entered for the defendant if the ruling was to stand; otherwise, there was to be a new trial.

*G. F. Williams,* (*J. A. Halloran* with him,) for the plaintiff.

*S. Hoar,* (*G. P. Furber* with him,) for the defendant.

Loring, J. In this case the plaintiff sues for an injury caused by her falling over an unguarded wooden platform, about six inches in height, in that part of the south terminal station in the city of Boston lying between the waiting rooms on the one side and the fence which shuts in the tracks on the other side. The unguarded platform which caused the accident was stated, at the argument, to be the floor of a booth for the sale of articles, which was then being built.

It is stated in the report "that the station in which the plaintiff was injured was owned and operated and controlled exclusively by the Boston Terminal Company, a corporation organized under Chapter 516 of the Acts of 1896, and that there were no instruments or agreements under which the defendant entered and used said station and under which said station was used, operated and maintained other than said statute. There was no evidence that the defendant owned, leased, occupied, used, maintained or controlled the premises where the plaintiff was injured, except as stated." The only other statement in the report which is material is that the South Terminal Station is the "regular terminus in said Boston at which passengers were received and discharged by the defendant in the regular course of its business as a common carrier of passengers." The ground on which it is sought to cast upon this defendant a liability for the negligence of another corporation, on the premises of that other corporation and within the control of that other corporation, is that such was the intention of the act, taken in connection with the rule that one railroad using the tracks of another railroad by arrangement, in place of building its own tracks, is liable although it has no control over the tracks of the other road.

As the contention of the plaintiff depends to some extent on this rule of law, it will be convenient to come to a definite understanding of the rule before considering the construction of the act.

It was laid down in *Littlejohn* v. *Fitchburg Railroad*, 148 Mass. 478, 481, that a passenger has his remedy against the carrier which has undertaken to transport him over the line operated by it, for an accident which occurs while he is being transported by that carrier over the tracks of another railroad, even if the owner of the tracks alone was in fault. Although no decided case has presented that proposition, we have no doubt that what is laid down in *Littlejohn* v. *Fitchburg Railroad* is the law of this State.

This rule rests upon the ground that it is immaterial what arrangements are made by a carrier for transportation within the two terminal points between which it is operating a railroad; that it is liable to a passenger between those two points, whether it conducts its business by its own servants or by contract with others over whom it has reserved to itself no control.

The same conclusion was reached in England, on the ground that a carrier who sells a ticket to a point on the road of a connecting carrier is liable, in the absence of a stipulation to the contrary, as matter of contract, for the whole transportation, even for the part not performed by it. That the rule in question in England rests on that ground see *Great Western Railway* v. *Blake*, 7 H. & N. 987, 991, 993, 995, and *Thomas* v. *Rhymney Railway*, L. R. 6 Q. B. 266, 273, 275. But the rule as to connecting carriers is otherwise in this Commonwealth; *Nutting* v. *Connecticut River Railroad*, 1 Gray, 502; *Darling* v. *Boston & Worcester Railroad*, 11 Allen, 295; *Moore* v. *New York, New Haven, & Hartford Railroad*, 173 Mass. 335; here the rule in question must rest on the ground already stated.

We have no doubt that this rule applies in case of the use of a station as well as in case of the use of the tracks of another railroad. See in this connection *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray, 124.

This brings us to the construction of the provisions of the act and of the defendant's relation to the Terminal Company under it.

The only relation which the defendant had to the Terminal Company or to the station was that it acted in obedience to § 9, which provided that " upon the completion of said station " all said railroad companies " shall use the same."

In determining what relation the defendant came under by using the station it is to be noted in the first place that § 9 provided that the Terminal Company " may contract with either of said railroad companies for the use of such separate and specified portion or portions of the terminal station . . . as may be reasonably necessary for their respective use," but that no contract was made under that clause.

The act not only provides in § 1 that the Terminal Company is created to " maintain " the station and " to provide and operate adequate terminal facilities for the several railroad companies . . . and for the accommodation of the public in connection therewith," but it also provides in § 3 that " The immediate government and direction of the affairs of " the company shall be in five trustees; and in § 8, that the Terminal Company " upon the completion of said union passenger station and grounds, shall make reasonable rules and regulations for their use "; § 8 also provides that " upon the application of either of said companies or of the mayor of the city of Boston," the railroad commissioners may, after hearing, modify these rules and regulations. By § 10 it is provided that the expenses of the Terminal Company, including a dividend of four per cent upon its capital stock, shall be paid by the five corporations using the station, in proportion to the use made by each; and by § 4, that, in case the bonds issued to pay for the union station are not paid, the several corporations using the station shall be liable for the deficit in proportion to the use they have severally made of the station. By § 2 the capital stock was fixed at $500,000, and each of the five corporations was authorized to subscribe to one fifth thereof.

This case does not come within the rule that a railroad corporation, which voluntarily uses the station of another railroad as its terminal station without reserving to itself any control over it, is liable for an accident which happens to one of its passengers within the limits of the station. In this case the defendant was compelled by the Legislature to " use " this

union station, which is the property of another corporation, and in the control of that other corporation; it was a stockholder, and as such had a vote as to the conduct of the other corporation, but that did not make it liable for the acts of the corporation; it could appoint one of the trustees, but that does not make the acts of the corporation its acts; it could apply to the railroad commissioners to have the regulations governing the use of the station changed, but so could the mayor of the city of Boston; that did not make either one or the other liable for the negligence of the corporation. The provision that it shall "use" the station would have been significant had any option been given to the defendant railroad; but when the defendant railroad was compelled to use a union station owned and operated by a separate corporation, in the opinion of a majority of the court it was intended that it should deliver its passengers to the care of the owner of the union station, and that however it may be in case an accident occurs while the defendant's trains are being drawn by the defendant over the tracks of the Terminal Company, the defendant's liability to the plaintiff is at an end when the passenger alights in safety from its cars on to the platform of the station of the Terminal Company. The relation between the five railroad companies and the Terminal Company is virtually that between connecting railroads.

The case of *Eaton* v. *Boston & Lowell Railroad*, 11 Allen, 500, was much relied on by the plaintiff. That was a case where the defendant and the Eastern Railroad used the tracks of the Essex road in common, under permission given by a special statute; St. 1851, c. 128; the accident was caused by the wheels of a cart getting caught between one of the rails of the Essex company's tracks and some planking; this stopped the train of the defendant, and while so stopped it was run into from behind by a train of the Eastern Railroad. The jury were instructed that if the Eastern Railroad was alone in fault the defendant was not liable, but if the neglect of the defendant contributed to the injury it was liable; the points decided were that a clause in St. 1851, providing that in case of any accident the company in fault should be liable, was intended to regulate the liability between the corporations and not to affect the lia-

bility of either road to its passengers; and that the fact was immaterial that, by another clause in the act, if the two railroads did not agree as to the arrangements to be made for the common use of the Essex Railroad tracks, it was provided that the points of difference were to be settled by the county commissioners. In that case the defendant was in fact using the tracks in question in transporting the plaintiff, and its use of them was voluntary; it might or it might not have availed itself of the permission to use the tracks of the Essex Railroad, and there was no suggestion that the rule of the county commissioners in any way affected the control of either train or the movements of the cart. In the case at bar, the defendant's transportation was at an end, and it had been compelled by the Legislature to end its transportation by delivering its passengers to the Boston Terminal Company, in place of furnishing a station of its own.

We do not think that the fact " that the plaintiff had purchased a ticket of the defendant for transportation from a station on one of its lines in Scituate, Mass., known as Egypt, for Boston," would warrant a finding that the defendant had contracted to carry the passenger to any point in Boston beyond its line, within the rule that although a carrier *prima facie* does not contract to carry beyond its own line (*Nutting* v. *Connecticut River Railroad*, 1 Gray, 502, *Darling* v. *Boston & Worcester Railroad*, 11 Allen, 295, *Moore* v. *New York, New Haven, & Hartford Railroad*, 173 Mass. 335), yet it may do so, and if in fact it does so, it is liable for an accident beyond the terminus of its line. *Najac* v. *Boston & Lowell Railroad*, 7 Allen, 329. *Hill Manuf. Co.* v. *Boston & Lowell Railroad*, 104 Mass. 122. *Feital* v. *Middlesex Railroad*, 109 Mass. 398.

The judge was right in directing a verdict for the defendant.

*Judgment for the defendant.*