ANNIE E. HUNT *vs.* NEW YORK, NEW HAVEN, & HARTFORD
RAILROAD COMPANY.

GEORGE W. HUNT *vs.* SAME.

Middlesex.   March 13, 14, 1912. — May 24, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Railroad,* Passenger. *Boston Terminal Company. Agency,* Existence of relation. *Negligence,* Railroad. *Joint Tortfeasors.*

One, who is waiting in the south terminal station in Boston outside a fence separating the tracks and the platforms between them from the rest of the station, and who has purchased a ticket and intends to board a train of one of the railroad companies which are compelled by St. 1896, c. 516, § 9, to use that station, is not a passenger of such railroad company.

The Boston Terminal Company which, in accordance with the provisions of St. 1896, c. 516, owns, operates and maintains the south terminal station in Boston, under § 8 of that statute made a rule that trainmen in the employ of one of the railroad companies which by the statute was compelled to use the station for its trains "will remain in charge of the train while passing over the track of" the Boston Terminal Company, and also made other rules governing the way in which the trains should be operated. *Held,* that the employees of the railroad company while they were in charge of a train of the railroad company in the station remained servants and agents of the railroad company, and that the railroad company was liable for the consequences of their negligent acts.

One, who was injured in the south terminal station in Boston as a result of confusion in a crowd waiting there for a train of one of the railroad companies which are compelled by St. 1896, c. 516, § 9, to use that station, when the train in backing into its place in the station ran over a bumper at the end of the track, broke down a fence separating the track area from the crowd and ran into the crowd,

brought two actions, one against the Boston Terminal Company and the other against the railroad company, and the actions were tried together. Under §§ 8 and 9 of the statute and rules adopted by the Boston Terminal Company, trains in the station were operated solely by that company, but they continued in charge of the employees of the railroad company owning them, whose duty it was to operate them under the rules of the terminal company. There was evidence of negligence of the terminal company, and also evidence tending to show a violation, on the part of the employees of the railroad company who were in charge of the train, of the rules of the terminal company and a careless management of the train. The trial judge ruled, subject to exceptions by the plaintiff, that the plaintiff could recover in only one of the actions. The jury found for the plaintiff in the action against the terminal company, and for the defendant railroad company. *Held*, that the exceptions should be sustained, because there was evidence of negligence on the part of both defendants which concurred to cause the plaintiff's injury.

Where, at the trial together of two actions by the same plaintiff against different defendants for personal injuries caused by concurring negligence of the defendants in the two actions, the presiding judge wrongly rules that the plaintiff can recover in but one of the actions, and the plaintiff receives a verdict in one of the actions and in the other a verdict is returned for the defendant, the plaintiff is prejudiced by the error and an exception by him should be sustained.

RUGG, C. J.  These are two actions of tort, both of which were tried* together with two similar actions brought by the same plaintiffs against the Boston Terminal Company. The action of Annie E. Hunt, (who will hereafter be referred to as the plaintiff) is for the recovery of damages for personal injuries sustained by her, and that of George W. Hunt, who is her husband, for his expenses in consequence of the injury to his wife. There was evidence tending to show that the plaintiff, having bought a ticket of the defendant for transportation over its line of railroad on a special train, was waiting in the south terminal station in Boston for the train on which the ticket entitled her to ride. The excursion train, instead of stopping at the usual place upon the track, came through the bumper and fence at the end of the track about ten feet into the space reserved for passengers.† In the resultant confusion among the waiting crowd, the plaintiff was thrown down and received injuries. The south terminal station and all tracks converging there for a distance of about half a mile were owned by the Boston Terminal Company, a corporation organized under St. 1896,

---

* Before *Bell*, J.

† It appeared that the plaintiff was waiting outside the fence, the gate leading to the space beside the track being closed.

c. 516, and all trains, cars and engines were operated over the tracks so owned solely by the Boston Terminal Company. The New York, New Haven, and Hartford Railroad Company used the south terminal station in accordance with St. 1896, c. 516,* as the Boston terminal for its trains, and the locomotive and cars which ran over the bumper on the day in question were the property of the New York, New Haven, and Hartford Railroad Company. Among the rules of the Boston Terminal Company in force respecting its station at the time were these:

"Conductors, enginemen and other trainmen in the employ of the company owning or operating a train will remain in charge of the train while passing over the track of this company.

"In backing train into station great care must be exercised by enginemen and men in charge of train not to strike bumping-post or cars that may be standing on track.

"The train must come to a stop ten feet away from bumping-post or stationary cars before backing up to proper position.

"In addition to these rules, trainmen, enginemen and other

---

* The sections of this statute which relate to the operation of trains in the station and to the control of the station are as follows:

"Section 8.  Said terminal company, upon the completion of said union passenger station and grounds, shall make reasonable rules and regulations for their use; and the board of railroad commissioners, upon the application of either of said companies or of the mayor of the city of Boston, and a hearing may, from time to time, make any modification of such rules and regulations which they may deem just and reasonable.  Such rules and regulations shall be binding upon all corporations and persons in the use of said station and grounds, and shall be enforced by railroad police officers who may be appointed upon the application of the terminal company, in the same manner and with the same powers in said station and grounds, and with like liability of the terminal company for their acts, as railroad police officers under the general law.

"Section 9.  All said railroad companies upon the completion of said station shall use the same, and the terminal facilities provided by said terminal company on the land herein-above authorized to be taken, for all of their terminal passenger business in Boston, instead of the passenger terminals now used by them, and the Supreme Judicial Court, or any justice thereof, shall have jurisdiction in equity to enforce this provision; but said terminal company may contract with either of said railroad companies for the use of such separate and specified portion or portions of the terminal station hereinafter provided for as may be reasonably necessary for their respective use."

employees will comply with the rules or special orders of their respective companies when such do not conflict with the rules of this company."

The plaintiff contends that she was entitled to an instruction to the effect that she had the rights of a passenger against the present defendant. Ordinarily, one who has bought a ticket of a railroad company and is waiting for the train in the station, either of the company, from whom the ticket was bought, or of another company whose station the first company is using voluntarily, is a passenger and entitled to all the protection of a passenger. This general rule does not apply in its full scope to the Boston terminal station as was decided in *Frazier* v. *New York, New Haven, & Hartford Railroad*, 180 Mass. 427. It was held there that the railroad companies using that station have no option respecting it, but are compelled by act of the Legislature to use it and that the effect of the statute is to require the railroad companies using " a union station owned and operated by a separate corporation " to " deliver its passengers to the care of the owner of the union station and that " the railroad company's liability to its passenger " is at an end when the passenger alights in safety from its cars on to the platform of the station of the terminal company." Although the facts in that case were nearly the converse of those presented in the present case, the governing rule of law must be the same. The rights of a passenger do not accrue to one, having a ticket and intending to board the train of a railroad using the station, earlier than the moment when standing upon the platform adjacent to the train the ticket holder is about to step upon the train. The plaintiff was not, therefore, entitled to the protection of a passenger as against the present defendant. The reasons for this are set forth at length in the Frazier case and need not be repeated.

The trial judge instructed the jury, subject to the plaintiff's exception, that she was not entitled to a verdict against both the railroad company and the terminal company, and left it to the jury to say which one of the two corporations caused her injury. Plainly there was evidence as to the negligence of the terminal company, and the verdict of the jury has settled that its negligence was a cause contributing to the plaintiff's injury.

The question whether a railroad company using the south

terminal station can be held responsible for an accident occurring while its trains are being drawn over the tracks of the terminal company was left undecided in *Frazier* v. *New York, New Haven, & Hartford Railroad,* 180 Mass. 427, 431. That point is now presented for decision. Sections 8 and 9 of St. 1896, c. 516, give to the terminal company authority to make reasonable rules and regulations for the use of the station and its approaches, which shall be binding upon the corporations using the same. Therefore the rules which have been quoted were binding upon the defendant railroad. Although the trains were operated by the terminal company, its rules required all trainmen, including the engineers of the several railroad companies, to continue in charge of each train while passing over the tracks of the terminal company. The effect of this rule was not to suspend their employment by the railroad companies, and to transfer them wholly into the service of the terminal company during the period when the train was upon its tracks. The rule does not purport to go so far. The servants of the several railroad companies remain their servants under the responsibilities of their general employment. There is super-added to their duties as railroad employees the obligation to observe the rules and to obey the directions of the terminal company as to the management of trains while upon the terminal company's property. The signals and switches, which regulate the movements of trains into and out of the terminal station, are in the charge of the terminal company, and in this sense all trains are operated solely by it, but the specific control of a locomotive belonging to the defendant coming into the terminal station still remains in its servants and agents, and its employees are subject to all its rules and orders so far as they do not conflict with the rules of the terminal company. Its trains are in the custody of its own servants and are manned by them, although the general direction of their movements is vested in the terminal company. These being the respective duties and obligations of the terminal company and the defendant, there was evidence enough to support a finding that the negligent act of the defendant's servants, either in applying too much power from the locomotive or in driving the train at too high speed against the bumper or in failing properly to inspect the brakes and other appliances for governing the train, may have concurred with the negligent act of the terminal company

in giving signals for the speed of the train and its position in the station, to produce the derailment and panic which resulted in the plaintiff's injury. *Corey* v. *Havener,* 182 Mass. 250. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575. *D'Almeida* v. *Boott Mills,* 209 Mass. 81.

The case does not necessarily present the instance of a general employer who lends his servant absolutely and unqualifiedly into the service of another so that the latter becomes in fact the master, concerning direction of all his movements and conduct. Hence, *Coughlan* v. *Cambridge,* 166 Mass. 268, 277, and *Rourke* v. *White Moss Colliery Co.* 2 C. P. D. 205, are not decisive.

The facts call rather for the application of the principle illustrated by cases like *Driscoll* v. *Towle,* 181 Mass. 416; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, and *Waldock* v. *Winfield,* [1901] 2 K. B. 596, where a servant remains in the general employ of the defendant, who hires, discharges, pays and, except as required by the terms of a definite arrangement giving a qualified authority for certain purposes to another, has the direction of his conduct. In such case the general employer may be liable for the negligence of the servant. It is akin to the cases where the owner of a horse and vehicle or of an automobile lets the instrument of carriage, together with driver or chauffeur, to another, who has the power of direction as to the route of travel. Responsibility still remains for most purposes in the general employer. *Hussey* v. *Franey,* 205 Mass. 413. *Shepard* v. *Jacobs,* 204 Mass. 110. Each case turns upon the terms of the agreement between the two employers. There is nothing in the nature of things which prevents both being responsible. A negligent order and a negligent execution of the order may concur in causing harm to a third person. In such case the sufferer may hold both the one responsible for the order and the one responsible for its execution and collect his compensation where he chooses from among those liable. The present case belongs to that class. It was error to rule that a verdict could be found against one only of the two defendants. *Cain* v. *Hugh Nawn Contracting Co.* 202 Mass. 237. *Berry* v. *New York Central & Hudson River Railroad,* 202 Mass. 197.

The plaintiff cannot be said to have suffered no injury by reason of this misdirection. The recovery of the judgment against the terminal company without satisfaction is no bar to the recovery

of the judgment against the defendant, whose wrongful act may have been found concurrently to have contributed to the plaintiff's injury. *Cameron* v. *Kanrick,* 201 Mass. 451. The trial judge did not pursue the policy of submitting a special question to the jury to find the damages of the plaintiff, as was done in *Burke* v. *Hodge,* 211 Mass. 156, and therefore the plaintiff is entitled to a new trial against this defendant upon all issues.

*Exceptions sustained.*

*E. P. Saltonstall,* (*A. M. Beale* with him,) for the plaintiffs.

*J. L. Hall,* for the defendant.