## Ashland Coal & Iron Company, et al. v. Elswick.

(Decided November 12, 1920.)

### Appeal from Boyd Circuit Court.

1. Carriers—Terminal Facilities.—Both the common carrier whose duty it is to furnish terminal or other facilities and the carrier that actually furnishes them, assume all of the duties of a carrier to a passenger of either with reference thereto, whatever their liabilities to each other by reason thereof.

2. Carriers—Contract Between Carriers—Leasor's Liability.—The contract between carriers for use by one of the facilities of the other is not conclusive of the leasor's liability to passengers of the other carrier knowingly permitted to use its transportation facilities.

3. Carriers—Negligence—Assault of Drunken Intruder.—Where one carrier leased its tracks to another, and knowingly permitted the lessee to use its depot for the accommodation of lessee's passengers who were regularly received and discharged at such depot, the leasor is liable for negligence of its agent in charge of the depot in failing to protect a female passenger of the lessee so using same from assault by a drunken intruder.

4. Damages—Excessive Damages.—$1,500.00 not excessive as compensatory damage under the facts of this case.

HAGER & STEWART and PROCTOR K. MALIN for appellant, Ashland Coal & Iron Ry. Co.

WORTHINGTON, COCHRAN, BROWNING & REED for appellant, C. & O. R. R. Co.

WILLIS & DAVIS and B. S. WILSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The Ashland Coal and Iron Railway Company and the Chesapeake & Ohio Railway Company by a trackage

agreement operate their separate passenger trains over a single track from Ashland, via Seaton to Hitchens and beyond. The track from Ashland to Seaton is owned by the former and from Seaton to Hitchens by the latter. The only passenger depot at Hitchens is owned by the C. & O. Ry. Co. at which both companies stop their trains and receive and discharge passengers. The agent in charge of this depot is employed and paid by the C. & O. Ry. Co. and sells tickets for its trains only, but he performs a telegraph service for both companies and gives information of the time of the expected arrival and departure of the passenger trains of both companies. Prospective passengers on the Ashland Coal and Iron Ry. Co. trains use the waiting room of this depot with the knowledge and acquiescence of the C. & O. Ry. Co.

On a Sunday in February, 1917, the plaintiff, now appellee, purchased from the Ashland Coal & Iron Ry. Co. at Ashland a round trip ticket to Hitchens and that morning was carried on its regular passenger train to Hitchens and discharged at the C. & O. Company's depot. After spending the day with her parents in the country about a mile from Hitchens, she returned to this depot with her sixteen year old brother about 4 p. m. to await the arrival of the Ashland Coal & Iron Company's regular passenger train due at about 4:40 and to return thereon to Ashland.

Shortly before the arrival of her train a drunken man, Bert McDavid, as she claims, insulted and assaulted her in the depot and ejected her therefrom.

For the injuries thus sustained she used the Ashland Coal and Iron Ry. Co. and the C. & O. Ry. Co. and recovered a joint verdict and judgment against them for $1,500.00 which they by this appeal seek to reverse.

The basis of the recovery is the alleged failure of the agent in charge of the depot, George B. Gray, to exercise ordinary care to protect plaintiff, and it is admitted by both defendants that the issue of negligence was properly submitted to the jury and that the evidence on that issue was sufficient to sustain a verdict for plaintiff, if they are liable for Gray's alleged negligence.

But each defendant contends that the court erred in overruling its separate motion for a directed verdict, and both insist the verdict is excessive.

The Ashland Coal & Iron Ry. Co. insists that it is not liable for Gray's negligence because he was not its agent, while the C. & O. Ry. Co. insists it is not liable therefor

because plaintiff was at most a mere licensee in her use of its depot to whom it owed no duty other than not to willfully or intentionally injure her.

To sustain the contention of the Ashland Coal & Iron Ry. Co. we would have to hold that a carrier, by using a depot owned by another instead of providing one of its own for the accommodation of its passengers at one of its regular stations, could avoid altogether the duty of furnishing terminal facilities for its passengers.

To sustain the contention of the C. & O. Ry. Co. we would have to hold that one carrier could permit another by some arrangement satisfactory to both to use its terminal facilities for the accommodation of the other's passengers without assuming any of the duties of a carrier to such passengers.

To sustain either contention it would be necessary to assume that a carrier's duties to its passengers begin and end at the train platform, which of course is not true. That carriers cannot so limit their obligations by any agreement or practice is thoroughly established without a single dissenting authority. Both the carrier whose duty it is to furnish terminal or other facilities and the carrier that actually furnishes them, assume all the duties of a carrier to a passenger of either with reference thereto whatever their liabilities to each other by reason thereof. Among the Kentucky cases so holding are L. & N. Ry. Co. v. Breeden, 111 Ky. 729, 64 S. W. 667; L. & N. Ry. Co. v. Johnson, 168 Ky. 351, 182 S. W. 214; Chicago, St. Louis & New Orleans Ry. Co. v. Rowell, 151 Ky. 313, 151 S. W. 950. See also Frazier v. N., etc., R. R. Co., 180 Mass. 427, 62 N. E. 731; Barrow Steamship Co. v. Kane, 88 Fed. 197; Brady v. Chicago, etc., R. R. Co., 114 Fed. 100, 57 L. R. A. 712, 10 C. J. 883.

Neither the contracts between carriers in such cases, though binding upon them or the companies' rules which are binding upon its employees, are conclusive when competent evidence of a carrier's liabilities to its own passenger or passengers of another carrier knowingly permitted to use its transportation facilities. Providence, etc. v. Johnson, 115 Ky. 84; C. N. O. & T. P. R. R. Co. v. Ackerman, 148 Ky. 435, 146 S. W. 1113; L. & N. R. R. Co. v. Dyer, 152 Ky. 264, 153 S. W. 194; Kuhlen v. Boston St. Ry. Co., 79 Mass. 815, 7 L. R. S. (N. S.) 729, 17 Cyc. 750.

In support of their separate motions for a peremptory counsel for the Ashland Coal & Iron R. R. Co. cite no authorities whatever and counsel for the C. & O. Co. cite

only two; Johnson v. Louisiana R. & N. Co., 56 So. 301, 36 L. R. A. (N. S.) 887, and Seelars v. Richmond & D. R. Co., 94 S. C. 654. But neither of these cases which expressly recognize the above stated doctrines is in point since in each the particular use of the involved facilities by the lessee was unauthorized by the leasor, and upon this distinguishing feature the exemption from liability was allowed to the leasor; whereas in this case the use of its depot at Hitchens by the lessee was authorized by the leasor not only by knowledge and acquiescence but also we think by the contract between them upon any fair construction although not in express terms. By that contract the C. & O. R. Co. granted to the Ashland Coal & Iron R. Co. the right to operate its passenger trains over the former's track between Seaton and Hitchens and that this right carried with it the right to use the depot at Hitchens can not be doubted in light of the fact that both parties have so construed it for many years.

The contention that the verdict for $1,500.00 is excessive is based upon the fact that plaintiff's physical injuries were not permanent and that her character is such that she could not have suffered humiliation or mortification.

According to plaintiff's testimony she was insulted, beat and kicked out of the depot in a particularly humiliating manner by McDavid in the presence of Gray and several others because of her rejection of an indecent proposal by McDavid. That he made the proposal to and struck plaintiff is admitted by McDavid, but he claims the proposal was invited and not resented by plaintiff and that he struck her in self defense when she, having taken offense during the discussion of terms, called him a vile name and kicked him. He denies kicking her at all. It is admitted that plaintiff was entitled to recover not only for her physical injuries, which were substantial though not permanent, but also for humiliation and mortification if any, and we certainly could not hold $1,500.00 is excessive as compensatory damages for the treatment accorded plaintiff unless, because of the proof of her own conduct and character, the humiliation and mortification she endured were necessarily negligible or at least slight.

The testimony of four witnesses for defendants that plaintiff's reputation for chastity and morality in the neighborhood where she now resides, in the home of a Wm. Kouns at Normal near Ashland, is bad, was not contradicted and she does not deny she used language to-

ward McDavid after he struck her that could not have been used by a woman of sensitive feelings. But even so and admitting the verdict is large we cannot say that the amount awarded strikes the mind at first blush as being so excessive as to have been the result of prejudice or passion. Whatever her character or her reputation where she now lives, according to plaintiff's testimony, which the jury had the right to accept rather than McDavid's, she was on a visit to her old home, was where she had a right to be and was behaving herself when without provocaton she was insulted, beat, kicked out of the public waiting room of the depot in the presence of old acquaintances and in a way that was calculated to be and necessarily was very humiliating to any one who possessed even a spark of pride or self respect.

No one would question the size of the verdict as compensatory damages alone if it had been rendered against McDavid, and according to plaintiff's witnesses, Gray, the agent in charge of the depot, was present in the waiting room throughout the occurrence and made no effort to protect her. This he denies, but if true, as the jury had the right to believe and must have believed, we do not see how the defendants are in any better position in this action with respect to compensatory damages than McDavid would have been in a suit against him.

Wherefore the judgment is affirmed.