# Covington & C. Elevated Ry. & Transfer & Bridge Co. et al. v. Sandlin.

Nov. 17, 1939.

Galvin & Tracy for appellants.
Orie S. Ware and William O. Ware for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Reversing.

The reversal of this judgment for $3,000 is sought upon three grounds: 1. The Court should have given a peremptory instruction in favor of the defendants, the appellants here. 2. The instructions given were erroneous and those offered by the appellant were correct. 3. The verdict is excessive.

The facts shown by the record are as follows: The plaintiff below, Mrs. Mamie Sandlin, the appellee here, at the time of the accident on May 6, 1936, was a woman 62 years of age and was in robust health. On that day she was a passenger on one of the trains of the Louisville & Nashville Railroad Company and she reached her destination at Covington around 4 o'clock, eastern standard time, in the afternoon. The passenger station where she left the train has two levels, the ticket office being on the lower level and the tracks and loading and unloading platforms are on the upper level. There are three loading platforms on this upper level which is some 16 to 18 feet above the lower level. Two flights of stairs lead from each loading platform to the lower level making six flights in all. The stairway used by the plaintiff contained 28 steps and was broken by a landing 8 feet in length, 17 steps from the top. This stairway, as are the other five, is modern and of approved construction, the steps being of concrete and approximately 8 inches high and a foot wide or deep, with corrugated treads 6 inches wide to prevent slipping, which treads are embedded in and level with the concrete. The stairway is 6½ feet wide with solid concrete walls on each side and attached to each wall are iron handrails three feet above the steps running from the top to the bottom.

About 8 o'clock on the morning of the accident both handrails on all six of the stairways had been painted and at 4 o'clock in the afternoon they still had "Wet Paint" signs on them. Mrs. Sandlin's husband met her on the platform, and when she alighted from the train she handed him a large grip and he and her granddaughter started down the steps in front of her. She followed carrying a light grip in her right hand and a woman's small zipper purse in her left hand or under her left arm, she is not certain which. Her husband called her attention to the wet paint sign. She also noticed it and descended the left side of the stairs

just out of reach of the painted handrail. Mrs. Sandlin testified she started down the steps the best she could and was careful so she would not fall as she had no handrail to hold to, and that she would have used the handrail had it not been painted and the use of the handrail would have prevented her fall. There was no crowd on the stairway and no one jostled her, but when she was a little more than half way to the landing she stumbled, or her heel hung on this corrugated part of the steps and her legs buckled under her causing her to fall in something like a sitting position. A colored porter or "Red Cap" and her husband helped her up. The Red Cap then took the baggage, and Mrs. Sandlin with the assistance of her husband walked to his place of business, a filling station about one block away. Doctor Hauser, the physician attending Mrs. Sandlin testified as to the nature and extent of her injuries and stated that they were permanent.

While the petition alleges the stairway on which Mrs. Sandlin fell was not properly lighted and was insecure, the sole ground of negligence relied upon by her on the trial was the painting of the handrails on all six of the stairways at the same time, so that she was deprived of the support of a handrail in descending the steps.

Counsel do not differ as to the correlative duties that the law places on the plaintiff and on the defendants. Where a passenger is waiting on its platform in the carrier's station, or is leaving its premises, the carrier does not owe the passenger the highest degree of care as is required in the course of transportation, but owes the passenger only reasonable or ordinary care. Payne v. Simmons, 201 Ky. 33, 255 S. W. 863, 33 A. L. R. 814; Hensley v. Braden, 262 Ky. 672, 91 S. W. 2d 34. Therefore, it was the duty of defendant to exercise ordinary care to maintain the stairway in a reasonably safe condition, and it was the duty of Mrs. Sandlin to exercise ordinary care for her own safety in descending the stairway.

We are confronted with the question, was there any duty on the defendants to furnish handrails on this stairway which was well-lighted and safe in every respect? And where Mrs. Sandlin fell on such stairs through no fault or negligence whatever of the defendants and a handrail would have prevented the fall if it had not been freshly painted and could have been

used by Mrs. Sandlin, is it negligence on the part of defendants to have painted all the handrails at one time on its six stairways, thus depriving Mrs. Sandlin the use of the handrail in descending the stairs?

We find no domestic cases holding where a stairway is used by the public there is an obligation on the owner to equip it with handrails in exercising ordinary care in keeping the stairway reasonably safe. Counsel cite us Nash v. Searcy, 256 Ky. 234, 75 S. W. (2d) 1052, but it does not contain the question now before us, therefore it is of but little help. Also, counsel cite Renfro Drug Company v. Jackson, Tex. Civ. App., 81 S. W. (2d) 101, 103, where the steps down which the plaintiff, Mrs. Jackson, fell in a drug store, were in complete darkness, had no handrail, and she slipped on a piece of chocolate candy which had fallen on the steps. A building inspector for the City of El Paso gave what, perhaps, would be incompetent testimony in this jurisdiction to the effect that this stairway was not safe without proper lighting and handrails. The court properly submitted to the jury the question of whether defendant was negligent in maintaining the stairway without proper lighting and handrails. In the course of that opinion the court said the stairway might have been safe, "in the absence of some foreign substance upon the stairway such as the chocolate candy, which might have contributed to cause her fall, and which she might not see without sufficient light and might not avoid a fall without the handrail."

We have no difficulty in distinguishing this Texas case from the one before us. Here there was no defect whatever in the stairs. They were adequately lighted; were six and one-half feet wide; the steps were a foot deep; had a six inch corrugated surface to prevent slipping and contained a rise of only eight inches; there was a solid concrete wall on each side of the stairway and there was no foreign substance on the steps to cause Mrs. Sandlin to slip or fall. We can readily see that there would be a duty on the owner of the building to have a handrail on an insufficiently lighted stairway, or an unusually steep stairway.

In McStay v. Citizens' National Trust & Savings Bank of Los Angeles, 5 Cal. App (2d) 595, 43 P. (2d) 560, two steps led from the lobby of the hotel to a platform of the foyer entrance to the dining room. The foyer was unlighted and these two steps were not protected

by handrails and Mrs. McStay "stepped off" the platform, was injured, and brought suit against the hotel operator. The court let the case go to the jury and a verdict was returned for the plaintiff. It appears from the opinion that the State Housing Act of California required handrails on stairways of certain dimensions and failure to so equip such stairways is negligence as a matter of law in California. Hence, the question submitted to the jury was whether these two steps leading to the foyer platform was a stairway within the meaning of the Housing Act. It is apparent this case has no application to the instant one, since the negligence was bottomed on defendant's failure to comply with the Housing Act in not equipping these two steps, which the jury held was a stairway, with handrails.

In American National Bank v. Wolfe, 22 Tenn. App. 642, 125 S. W. (2d) 193, the bank maintained a marble stairway leading from the main floor down to a basement where lock boxes for patrons were kept. The stairway was sufficiently lighted, it had a handrail on the right side but none on the left; the steps were of marble with the treads on the first two steps worn down about 3/16 of an inch and the steps were about 54 inches wide. Mrs. Wolfe in descending the stairs to enter the basement did not hold to the handrail on the right side of the stairway and when she placed her foot on the first step her foot slipped, she tried to catch herself with her other foot on the second step and that foot slipped, whereupon she attempted to grab the left side of the marble stairway but there being no handrail there, she fell to the bottom of the stairway. It was not shown the accident was caused by the steps being worn, and the absence of the handrail did not cause her to slip; but she said she fell against the wall and tried to catch the wall but could not as there was no handrail. The court cited the Renfro case, supra, and held it was a question for the jury, after her feet slipped and she fell to the left side of the stairs, whether she could have caught the handrail, had there been one, and stopped her fall. The building ordinance of the City of Nashville required all enclosed stairways to have handrails on both sides about three inches distant from the wall and about 30 inches above the floor of the stairs. The court held it was a question for the jury whether the violation of the ordinance was the cause of the injuries. It is not difficult to differentiate this

case from the one at bar because there is no city ordinance here, or other law in Kentucky, providing for handrails on such stairs.

Walimaa v. Maki, 163 Minn. 352, 204 N. W. 25, 41 A. L. R. 965, is a case where a patron of a hotel fell down an inside stairway which had no handrails, and the court, in holding that the absence of handrails on such stairway did not constitute negligence on the part of the hotel owner, said:

> "Interior, walled stairways are probably made as frequently without as with handrails. Such prudence as is exercised by the ordinary man for the protection of his own folks so often omits them as to prevent judges and juries from branding that omission as actionable negligence."

Further on in that opinion the court said that a different question might be presented in the case of stairways of a more public nature, where the frequent presence of a jostling throng might make it a question of fact whether a due regard for safety might require handrails on both side of the stairways.

But it is common knowledge that stairways in such public buildings as railroad stations are often very wide and handrails on each side of same could be used by but few persons in ascending and descending the stairs. If we should hold it to be negligent in the railroad company not to equip such stairways with handrails on each side, then why should we not go a step further and say there should be a handrail down the center, or require the railroad company to have handrails every three feet, or every ten feet, on broad stairways? This would make a multiplicity of handrails on very wide stairways which would be more of an impediment than a benefit to the public, indeed, it might be a source of danger where a jostling crowd could shove someone against such handrails and injure them. Experience teaches us such stairways are not so constructed.

Here the stairway was not very broad, being only 6½ feet wide, and was adequately lighted, with broad steps and with but slight rise between the steps, and it is in the rarest instances that persons descending or ascending such stairways use handrails. When we know that thousands of persons go up and down such stairways daily without resorting to the use of handrails, we cannot say the court should have submitted

to the jury the question of whether or not defendant was negligent in painting these handrails so as to deprive plaintiff of the use thereof. Counsel for Mrs. Sandlin ask the question: "Why did the defendants equip the stairways with handrails if it were not to maintain such in a reasonably safe condition?" Our answer is that handrails are placed on such stairways as a matter of convenience for the very aged and infirm. The fact that defendants temporarily withdrew these handrails from use did not constitute negligence, where there was no duty on defendants to so equip their stairs in the exercise of ordinary care to maintain them in a reasonably safe condition.

Being of the opinion that the court should have peremptorily instructed the jury to find for the defendants, it is not necessary for us to discuss the instructions given by the court, or to determine whether the verdict is excessive. The judgment is reversed with directions to the court to peremptorily instruct the jury to find a verdict for defendants on another trial of this case should the evidence be substantially the same as that presented in the record before us.

Judgment reversed.

Whole court sitting.