JANE E. BARTOL *vs.* CITY OF BOSTON.

SAME *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   October 22, 1926.— May 18, 1927.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Public Officer. Boston,* Subway. *Boston Elevated Railway Company. Negligence,* Station in subway. *Evidence,* Relevancy.

The inherent character, as a public work or agency for the use of the public, of the transit subways and tunnels in the city of Boston was not changed by St. 1902, c. 534, § 19, nor by Spec. St. 1918, c. 185; and an action for personal injuries resulting from alleged negligence or improper construction of a platform in a subway, by reason of which the plaintiff fell in a "wide space" between the platform and a street car from which she was alighting, cannot be maintained against the city.

The Boston Elevated Railway Company, having no control over the size or plan of a platform in the Tremont Street subway, is not responsible

for the existence of spaces between the platform and street cars discharging passengers at a station there; and in an action by a passenger against the corporation for personal injuries resulting from a fall in a "wide space" alleged negligently to have been maintained between a car and the platform, evidence, offered by the plaintiff, of suggestions by the defendant, to the public authorities constructing the platform, of changes looking to a platform safer for use, was inadmissible.

TWO ACTIONS OF TORT for personal injuries. Writs dated March 1, 1923.

The actions were tried together in the Superior Court before *Qua*, J. Material evidence and rulings by the judge are stated in the opinion. By order of the judge, a verdict was entered for the city of Boston in the first action. The jury found for the Boston Elevated Railway Company in the second action. The plaintiff alleged exceptions.

*E. C. Park*, for the plaintiff.

*S. Silverman*, Assistant Corporation Counsel, for city of Boston.

*H. F. Hathaway*, for Boston Elevated Railway Company.

RUGG, C.J. The plaintiff, while a passenger on one of the cars operated by the Boston Elevated Railway Company, as she was alighting at the Haymarket Square Station in the Tremont Street subway, slipped on the step of the car and fell into the space between the car and the platform of the station. The evidence tended to show that the station platform was slightly curved at the regular berth where the car stopped, that it was constructed of concrete, and was raised eighteen inches above the level of the roadbed. The nearest rail was thirty inches from the platform. The space between the car and the platform was wide enough to permit a human body to enter, and was characterized as a "wide space." Over it passengers were compelled to step in leaving the car. To recover damages sustained by her in falling into this space, the plaintiff brought an action against the city of Boston and another action against the Boston Elevated Railway Company. Each case comes before us by a separate bill of exceptions, but both may be considered in one opinion.

Verdict rightly was directed for the defendant in the action against the city. It is conceded that the subway where the

accident occurred, although owned by the city of Boston, was constructed by the Boston Transit Commission, a board of public officers for whose negligence the defendant was not liable. St. 1894, c. 548, §§ 23–40, both inclusive. *Mahoney* v. *Boston,* 171 Mass. 427. *Codman* v. *Crocker,* 203 Mass. 146, 152. *Murphy* v. *Hugh Nawn Contracting Co.* 223 Mass. 404, 405. *Stewart* v. *Hugh Nawn Contracting Co.* 223 Mass. 525, 527. *McGovern* v. *Boston,* 229 Mass. 394, 397. It is contended that this principle is no longer applicable because of the enactment of two statutes. One is St. 1902, c. 534, which in substance provided in § 19 that the city of Boston "shall have, hold and enjoy in its private or proprietary capacity, for its own property, the existing subway, . . . and all rents, tolls, income and profits from all contracts heretofore or hereafter entered into for the use of said subways and tunnels or any part thereof, and the same shall never be taken by the Commonwealth except on payment of just compensation: provided, however, that so much of such rents, tolls, income and profits as may be necessary therefor shall be paid into the respective sinking funds for the redemption of said bonds and used for the payment of interest thereon." The other statute upon which this contention is made is Spec. St. 1918, c. 185, whereby the Boston Transit Commission ceased to exist after July 1, 1918, and all its powers and duties were imposed on the city of Boston to be exercised by officers designated by it. An ordinance has been enacted by the defendant pursuant to the power thus conferred.

The dominating factor in the construction and maintenance of the subways and tunnels in the city of Boston is the public use to which they are devoted. They have been held to constitute a public use for which taxation can be laid. *Prince* v. *Crocker,* 166 Mass. 347, 361. The subway was said by Chief Justice Holmes in *Browne* v. *Turner,* 176 Mass. 9, at page 12, to be "a public work for a public use." The construction of the subway and the appropriation of land under the surface of the street to that end has been held to be within the scope of the original taking for highway purposes and to impose no additional servitude. *Sears* v. *Crocker,* 184 Mass. 586, 589. *Peabody* v. *Boston,* 220 Mass. 376.

On principle the nature of the subway and tunnel is not altered by a change in the officers having charge of them. The duty with respect to them is a public duty and is imposed by statute on public officers, no matter by whom named. The circumstance, that the Legislature has undertaken to confer upon the city of Boston certain proprietary rights in the subway, does not change the public nature of the work as a whole. It is not necessary here to define the meaning of St. 1902, c. 534, § 19, quoted above, further than to say that it has not deprived the subways and tunnels of their inherent character as a public work or agency for the use of the public. See *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 418.

The fact, if it be a fact, that there is now a possibility of some revenue to the city above the carrying charges, does not impose general liability upon the defendant city and deprive it of the defences usually open to a public agency conducting a public enterprise for the general welfare. The case at bar comes within the principle illustrated by *Bolster* v. *Lawrence,* 225 Mass. 387, where it was held, with review of numerous pertinent cases, that the maintenance of public baths was a public enterprise although a fee might be charged in connection with their use. *Blaisdell* v. *Stoneham,* 229 Mass. 563. *Young* v. *Worcester,* 253 Mass. 481, 483. *Myers* v. *Boston,* 247 Mass. 36. See in this connection, *Child* v. *Boston,* 4 Allen, 41, 52; *Hill* v. *Boston,* 122 Mass. 344; *Pevear* v. *Lynn,* 249 Mass. 486, 488; *Harris* v. *District of Columbia,* 256 U. S. 650.

This being the nature of the subway, evidence as to the practicability of constructing as a part of the Haymarket Square station a platform more safe for the accommodation of travelers was excluded rightly. Cases like *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, *Plummer* v. *Boston Elevated Railway,* 198 Mass. 499, and *Cassidy* v. *Transit Department of Boston,* 251 Mass. 71, are inapplicable to the facts here disclosed.

The action against the Boston Elevated Railway Company was submitted to the jury and resulted in a verdict for the defendant. The plaintiff's exceptions relate to evidence

offered by her and excluded by the court. The plaintiff's declaration alleged general negligence of the defendant railway company and negligence in the construction of the steps of the car so as to require the plaintiff to step over a vacant space, in suffering snow and ice to be on the step, and in failing properly to light. The excluded evidence consisted of a letter from the president of the defendant railway company to the Boston Transit Commission, dated in 1898, wherein it was suggested that the height of the platform of the Haymarket Square subway station above the roadbed be substantially that at which it was constructed, and testimony that the chief engineer of the Boston Transit Commission originally prepared plans for such platform to be at the level of the tracks, and that these plans were changed to conform to the request of the officials of the defendant railway company; that prior to the accident studies were made by engineers of the transit department and of the defendant railway company, the result of which was a conclusion that the safest method of construction of the platform was that there should be a gradual slope down to the level of the tracks, and that the space as originally constructed endangered the safety of passengers, and that, although changes were made in some places, no change was made of the platform in question until after the accident.

It was said in substance in *Collins* v. *Boston Elevated Railway*, 217 Mass. 420, at page 421, that the subway and its platform were designed and constructed by public authority and have been leased to the defendant railway company. Having no control over the plan or size of the platform, the defendant railway company is not responsible for the existence of spaces between the cars and the platform. *Willworth* v. *Boston Elevated Railway*, 188 Mass. 220. *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14. *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 509.

The preliminary negotiations and suggestions as to the preferable type of platform did not bind the defendant railway company for any fault in the plan adopted. The plan when adopted, nevertheless, was that of the public authority and not that of the railway company. Evidence that sug-

gestions for changes by the railway company after the original construction had always been adopted was not pertinent. There was no obligation on the part of the public authority to accept such suggestions, and no legal responsibility on the railway company in making or in failing to make further and other suggestions. At most these amounted to nothing more than intimations from a prospective or actual tenant and did not impose upon such tenant the responsibilities of a landlord.

The expiration of the original lease to the defendant railway company and the execution of a new lease to it, and the changes in the statutes to which reference already has been made, do not alter the duties and obligations of the railway company in respect to the facts disclosed on this record. They remain as stated in the earlier decisions. See in this connection *Frazier* v. *New York, New Haven & Hartford Railroad*, 180 Mass. 427, and *Hunt* v. *New York, New Haven & Hartford Railroad*, 212 Mass. 102, 106. The case at bar is distinguishable from *Littlejohn* v. *Fitchburg Railroad*, 148 Mass. 478, in the essential feature that the structures here used were public property constructed by public authority for a specified public use, and from *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341, where the liability rested upon failure to exercise adequate police regulation of an unruly crowd. There is nothing inconsistent with this conclusion in *Theall* v. *Boston Elevated Railway*, 213 Mass. 327. It follows, also, that the principles on which expert evidence was held admissible and on which liability of the defendant was established in *Harrington* v. *Boston Elevated Railway, supra,* have no relevancy to the case at bar. In the Harrington case, the structures causing the injury were designed and built by the railway company. There was no error in the exclusion of evidence.

*Exceptions overruled in each case.*