ANTHONY ORLANDO *vs.* CITY OF BROCKTON.

Plymouth. November 13, 1935. — September 8, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Municipal Corporations*, Liability for tort, Public welfare.

A finding, that the operation of an almshouse by the board of public welfare of a city was an enterprise partly commercial in character so that the city was liable for negligence of an employee of the board, was not required on evidence which included nothing to warrant an inference that income or benefit derived by the city from the enterprise was other than insignificant.

TORT. Writ in the District Court of Brockton dated March 14, 1934.

The action was heard by *Murphy*, J., who found for the defendant. A report to the Appellate Division for the Southern District was ordered dismissed. The plaintiff appealed.

The case was submitted on briefs.

*W. F. Hallisey*, for the plaintiff.

*L. E. Crowley*, City Solicitor, for the defendant.

DONAHUE, J. The board of public welfare of the city of Brockton, consisting of three members elected by the city council, had the care and oversight of poor and indigent persons for whose relief and support the city was chargeable. G. L. (Ter. Ed.) c. 117, §§ 1, 2. The city provided an almshouse (the statutory name of which is infirmary, G. L. [Ter. Ed.] c. 47,) and a farm connected therewith for the relief and support of the poor and indigent under the supervision of the board of public welfare. It was also the duty of the board in its discretion under the statute to. provide relief for poor and needy persons outside the almshouse and farm.

The plaintiff, who was unemployed, applied to the board of public welfare for relief. He asked for an order which would permit him to purchase food at a grocery store to the amount of five dollars, and was told to report at the city farm on a day stated. He did so and with others was driven to Field Park, which was owned by the city, in an automobile truck registered in the name of the board of public welfare and operated by one of its employees. He worked all day carrying wood from the park to a road. At the close of the day he and other men at the direction of the driver climbed upon the rear of the truck on which was a load of wood tied with a rope. The plaintiff was obliged to stand on the rear of the truck holding on to the rope. According to the record the "driver started down an incline at a speed from five to twenty-five miles per hour as testified to by witnesses and drove into deep frozen ruts causing the truck to sway and the wood to shift. The driver continued on with the truck swaying and the wood

shifting striking the plaintiff throwing him off the truck, causing serious injuries. The driver . . . knew the plaintiff with others were standing on the truck as he had directed them to do so and knew the character of the land and location of the ruts as he had driven over them before."

A judge of a district court found for the defendant and reported his refusal to give certain rulings requested by the plaintiff to the Appellate Division and there the report was ordered dismissed. The evidence would warrant the finding that the driver was negligent and the plaintiff in the exercise of due care. While the report does not specifically state that the judge so found it seems to indicate that he did and that his finding for the defendant was based on the ground that the defendant city was not liable for any negligence of the employee of the board of public welfare in his operation of the truck. The defendant's brief states that "The question of law involved in this action is whether or not in the collection of the wood at Field Park and transporting the same to the City Farm, the Board of Public Welfare were acting as agents of the defendant." The plaintiff in his brief states the questions presented to be whether the business in which the driver was employed was such that engaging in it would subject the city to liability for negligence in conducting it or whether the driver was acting as agent for the board of public welfare merely in the performance of a public duty. We here consider the case on the basis on which it was argued by the parties.

The Legislature by placing in the hands of the board of public welfare the care and oversight of poor and indigent persons whom the defendant city was obligated to relieve and support (G. L. [Ter. Ed.] c. 117, §§ 1, 2), made the members of the board public officers for the performance of that public duty. A municipality, in the absence of special statute imposing liability, is not liable for negligent acts of its officers or employees in the performance of strictly public functions imposed or permitted by the Legislature from which no special corporate advantage, pecuniary profit or enforced contribution from individuals particularly bene-

fited, results. There is no such exoneration of a municipality from liability for negligent acts of its officers or employees in the performance of functions commercial in character, undertaken for its own profit or to protect or benefit its corporate interests. *Bolster* v. *Lawrence*, 225 Mass. 387, and cases cited.

The trial judge found that some of the wood collected at the park was used for the poor and some for heating shops maintained at the almshouse and farm. The quantity or value of the wood distributed among the poor and of that burned at the farm does not appear. It is plain that the collection and transportation of so much of the wood as was given to the poor were acts done solely in the performance of the public duty resting upon the board of public welfare. The collection and transportation of the wood used at the farm were acts forming a part of the maintenance and operation of the almshouse and farm. Because of this fact the plaintiff contends that at the time of the accident the driver was engaged and the truck was being used not only in the performance of a public duty but as well in connection with the operation of the almshouse and farm. This the plaintiff contends was an enterprise partly commercial in character and productive of profit or corporate benefit to the defendant city.

Since the plaintiff must show that the defendant city was liable for the conduct of the driver which caused his injury, the burden was on the plaintiff to prove that the operation and maintenance of the institution was such an enterprise. The few statements in the record descriptive of the method of operating and maintaining the almshouse and farm did not require a finding by the trial judge in accordance with the plaintiff's contention. It appears that, when room is available, out of town and State paupers are received and their board paid. The statute contemplates that persons other than paupers with whose care a municipality is chargeable may be received at such an institution; it authorizes the receipt and care of persons able to pay. G. L. (Ter. Ed.) c. 47, § 10. The record does not show whether the occasions when room was available for such boarders were frequent

or rare, whether there were any such boarders at the institution at the time of the plaintiff's injury, or how many boarders had been received in the past or the price paid for their board.

The record discloses that hundreds of pigs, fed on garbage collected throughout the city, were raised at the farm, but not who did the collecting or that any charge was made therefor or that there was ever a surplus not used at the institution or that any pigs were ever sold. It does appear that the products of the farm were used for the support of inmates and boarders and that any surplus not used for that purpose was sold and the price accounted for. But it is not shown how often there was any surplus, its quantity or character, or the amount ever received on such a sale. The mere fact that the surplus products of the farm provided by the city for the support of paupers and conducted by the board of public welfare were sold does not make their undertaking a commercial one. *Neff* v. *Wellesley*, 148 Mass. 487, 494.

The record does not disclose the number of paupers cared for at the institution or the cost of its operation and maintenance. There is no finding as to the amount of moneys received by it and no facts are found on which an estimate of the amount of its receipts can be made. There is nothing to warrant the inference that the receipts were other than insignificant. "It is not a correct proposition of law that because a city derives some incidental gain and advantage . . . the city is therefore responsible." *Kelley* v. *Boston*, 186 Mass. 165, 166. Where a comparatively insignificant income or benefit to a city incidentally results from the performance by public officers of a public duty, the dominating public character of their undertaking is not thereby changed and the city does not thereby become liable for negligence of such officers or of their employees in the performance of that duty. *Curran* v. *Boston*, 151 Mass. 505, 509, 510. *Taggart* v. *Fall River*, 170 Mass. 325, 327. *Bolster* v. *Lawrence*, 225 Mass. 387, 391–392, and cases cited. *Bartol* v. *Boston*, 259 Mass. 323, 326, and cases cited. *Hale* v. *Williamstown*, 292 Mass. 319.

No error appears in the finding of the trial judge for the defendant nor in his refusal to give the rulings requested by the plaintiff, which, in view of what has hitherto been said, need not be discussed in detail.

*Order dismissing report affirmed.*