JOHN BAUMGARDNER *vs.* CITY OF BOSTON.

Suffolk. November 3, 1937. — October 24, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Municipal Corporations*, Liability for tort. *Actionable Tort.*

The mere fact, that the operator of a motor truck under the direction of an inspector of the sanitary division of a city's public works department was a recipient of relief who had been directed by the overseers of public welfare to work in the sanitary division, did not relieve the city from liability for negligent operation by him.

A city was liable for personal injuries caused by negligence committed by its servant engaged in collecting refuse from a mercantile establishment where it appeared that its ordinance obliged it to collect domestic refuse without charge and permitted it to collect mercantile and industrial refuse upon payment of a rate established by its commis-

sioner of public works, that collections of mercantile and industrial refuse were made by the city in parts of the city only, that private contractors also made such collections at a less rate than that of the city, and that the city rate, while substantial, was less than cost.

TORT. Writ in the Municipal Court of the City of Boston dated February 17, 1936.

There was a finding for the plaintiff by *Gillen,* J., in the sum of $5,000.

*H. P. Moulton,* (*R. H. Field & W. A. Parks* with him,) for the plaintiff.

*E. K. Nash,* Assistant Corporation Counsel, for the defendant.

DOLAN, J. This is an action of tort to recover compensation for personal injuries sustained by the plaintiff when struck by a motor truck, owned by the defendant city and in service in the sanitary division of its public works department. The judge found for the plaintiff, and the case now comes before us on the plaintiff's appeal from the order of the Appellate Division that judgment be entered for the defendant.

There was evidence that the operator of the vehicle was negligent and that the plaintiff was in the exercise of due care at the time of the accident. The sole issue raised by the report is that of the responsibility of the defendant for the negligence of the operator of the truck.

The operator of the vehicle (hereinafter referred to as the operator), who was a recipient of relief or aid from the department of public welfare of the defendant, was directed by the overseers of the public welfare of the defendant to work in the sanitary division of its public works department. At the time of the accident he was operating the motor truck at the direction of an inspector of the sanitary division, and, under the latter's instructions, was proceeding from the city yard on Albany Street to premises occupied by "Rhodes Bros. Company on Massachusetts Avenue by the shortest possible route to collect refuse" from their store. The accident occurred on West Newton Street near Huntington Avenue, and at the time of the accident the truck was empty. Shortly after the accident the truck

proceeded to the store of "Rhodes Bros. Company" and there collected several barrels of mercantile or store refuse and took them "from there on the truck."

G. L. (Ter. Ed.) c. 40, § 4, (made applicable to cities by § 1,) provides in part as follows: "A town may make contracts for the exercise of its corporate powers and for the following purposes: For the disposal of its garbage, refuse and offal by contract for a term of years. Contracts for such disposal may be made by the selectmen, board of health or other officers having charge thereof."

Pertinent provisions of c. 27, § 1, of the Revised Ordinances (1925) of the City of Boston in effect at the time of the accident were that "The department of public works shall be under the charge of the commissioner of public works, who . . . shall remove and dispose of the following classes of refuse from dwelling houses and from housekeeping apartments or tenements, when it is placed in yards or areas so as to be easily removed, free of charge to the producers of such refuse and to the owners and occupants of such dwelling houses, apartments and tenements, viz., swill and kitchen garbage, dust and sweepings, ashes from fires used wholly or principally for heating or cooking, waste paper, cardboard, string, packing material sticks, rags, waste leather and rubber, boxes, barrels, broken furniture and other similar light or combustible refuse; tins, bottles, jars, broken glass, broken crockery, bones, shells, waste or broken metals and all other similar heavy or incombustible refuse. But the department shall not be required to take any such refuse from hotels, apartment hotels, restaurants, shops, stores, or from any other building whatever except those first hereinbefore enumerated and except buildings occupied by the city. The department shall not so take refuse of manufacturing or mercantile business, or dead animals, manure, plaster, building materials, earth or stones except from premises occupied by the city, but the department may take and dispose of any refuse upon payment by the producer thereof to the city of such compensation as the commissioner shall from time to time prescribe. The commissioner shall, on the fifteenth day of each month, send to

the city auditor detailed bills of all material, tools and machinery furnished by either of the divisions of the department to any other division or for any special work."

In pursuance of the terms of this ordinance the commissioner "had fixed a price of eleven cents per barrel as the compensation for taking and disposing of the refuse of a manufacturing or mercantile business. The defendant . . . [sold] tickets at eleven cents each, one of which . . . [was] surrendered in payment for the collection of each barrel of such refuse. For each barrel of refuse taken from Rhodes Bros. Company on the day of the accident, one of these tickets was given to a city inspector by an employee of Rhodes Bros. Company."

There was evidence that the defendant received, during 1935, the total sum of $22,253.66 as compensation for the collection of manufacturing and mercantile refuse, that this figure appeared as a receipt in the city auditor's report for that year, and that, for the year of 1935, the entire cost for the operation of the sanitary division was $1,238,607.28.

There was further evidence that it cost the city an average of twenty-three cents per barrel for the collection of all refuse collected by it (excluding collections done by others contracting with the city) including both domestic refuse for which it received no pay, and commercial refuse for which it received eleven cents per barrel; that the average is determined by dividing the total number of barrels collected into the entire expense of the sanitary division, including salaries and overhead for the year 1935. The city is divided into ten sanitary districts and in five of these districts the defendant contracts with others to collect refuse, the average expense per barrel to the defendant for collection by such contractors in such districts being nine and three quarter cents.

There was also evidence that in the other five districts, one of these being where the accident occurred, the collection and disposal of refuse is done by city employees and city trucks, and that the cost to the city for removing such waste in these five districts, both commercial and domestic, for the year 1935 was $342,834.40. Rhodes Bros. Company

is in a semiresidential district and in one of these five districts. There was a great volume of collection of commercial waste by private contractors in these districts where the city itself collects, and the price charged by private contractors for such collection was less than the price of eleven cents charged by the city.

At the close of the evidence the defendant presented seven "requests for rulings." The dispositions of only the third, fourth, sixth and seventh requests have been argued before us. Those requests were as follows: "3. That a welfare worker, receiving aid from the city of Boston, is not an employee of the city. 4. That the defendant cannot be bound by the torts committed by a welfare worker." "6. That receiving money for expenses does not constitute a profit. 7. That as a matter of law the defendant is not liable for the accident in question." In response to the third request the judge ruled thus: "Allowed; in the sense that a recipient of aid from the city of Boston is not on the regular pay roll of the department of the city to which he is assigned to work. But I find as a fact that the operator of the defendant's truck, notwithstanding the fact he was receiving aid from the city was the agent or servant of the defendant and acting within the scope of his employment at the time of the accident." The judge denied the fourth request. As to the sixth request he ruled as follows: "Allowed; but I rule that where a city or town is engaged in a commercial venture where liability attaches for the torts of its agents, whether or not the city or town is making the business profitable is immaterial." The seventh request was denied; its denial was accompanied by findings of fact which have already been recited, and by further findings that "the truck of the defendant was being used at the time of the accident in the conduct of a function voluntarily undertaken [by the defendant] for its own profit and commercial in character," and "That the collection and disposal of refuse of a mercantile business is not an act required to be performed by the defendant in its public capacity for the common good."

The only issues, therefore, to be determined are whether

the work in which the operator of the vehicle was engaged under the direction of the defendant's duly authorized agents was a commercial enterprise "voluntarily undertaken for profit or to benefit its corporate interests, although a public need is ultimately subserved," *Sloper* v. *Quincy*, 301 Mass. 20, 24, and cases cited, and, if it was such an enterprise, whether the defendant is liable for the negligent conduct of the operator of the truck, who was a "welfare worker." The latter question may better be disposed of first.

We think that it is immaterial whether the operator, who was paid for his services out of welfare or relief funds, was an employee of the defendant. The test is not whether the operator was an employee of the defendant, but rather whether he was its servant in the work in which he was engaged under its direction at the time of the accident. It is enough that at that time he "was in charge of the defendant's property by . . . [its] assent and authority, engaged in . . . [its] business, and, in respect to that property and business, under . . . [the defendant's] control." *Kimball* v. *Cushman*, 103 Mass. 194, 198. *Coughlan* v. *Cambridge*, 166 Mass. 268, 277. *Marsh* v. *Beraldi*, 260 Mass. 225, 231. See *McDermott's Case*, 283 Mass. 74, 75. The answer to the contentions of the defendant, that it is not liable in any event for the tortious acts of a welfare worker because relief of the poor is a governmental function in itself and charitable in its nature, is that, whatever may be the character of the functions of the overseers of the department of public welfare of the defendant city, the work upon which the operator was engaged was that committed to the management of the sanitary division of the street department and was in no respect charitable in its nature. We are of opinion that a municipality by the use of welfare workers, as distinguished from those regularly employed, in commercial enterprises entered into by it for profit or the corporate benefit, may not escape the liability to respond for the tortious acts of such welfare workers in the conduct of such enterprises. Obviously, in the instant case, the services rendered by the operator were as beneficial to the sanitary division as would

be those of a regular employee who was performing similar services. If the work in which the operator was engaged at the time of the accident was in connection with a commercial enterprise, voluntarily undertaken by the defendant for profit or to benefit its corporate interest, although a public interest was ultimately subserved, the defendant is liable for his negligent conduct, which was the cause of the plaintiff's injuries.

The remaining question is whether the work upon which the operator was engaged at the time of the accident was of that character. It is settled in this Commonwealth that the collection of waste matter by a municipality is a governmental function where no charge is made for such service. *Haley* v. *Boston,* 191 Mass. 291, 294. *Johnson* v. *Somerville,* 195 Mass. 370, 384. *Saperstein* v. *Everett,* 265 Mass. 195, 198. The question now under discussion was left open in *Haley* v. *Boston,* 191 Mass. 291. It appeared in that case that the sanitary division of the street department, which removed domestic refuse without compensation, charged ten cents a barrel for removing steam engine ashes, "just enough to cover the expense" of so doing, and that from this service the city received an income of $10,000 a year, and also received between $2,000 and $3,000 a year from the letting of space on scows of the division to various persons for the removal of offal and waste matter, the sale of manure and the rent of part of a wharf. The expenses of the division above income were $623,000. At pages 294–295, the court said: "Nor do we think that the whole of this service was commercialized because a charge, just enough to cover the expense involved, was made for the removal of steam engine ashes. If this injury had been caused by the negligence of the driver of a cart used for the removal of such ashes, a somewhat different question would arise, as to which we express no opinion. . . . The ordinances made a distinction between these two kinds of ashes; apparently the same distinction was observed in practice. It cannot be said that the same rule of liability would apply to the separate classes . . . ."

It is the settled law of this Commonwealth that "Apart

from statute, a municipality is not liable for negligence in the conduct of strictly public functions from the performance of which it receives no profit or advantage, because this 'would involve the municipality in endless embarrassments and difficulties which would be subversive of public interests.' *Galassi Mosaic & Tile Co.* v. *Boston,* 295 Mass. 544, 551. On the other hand, a city or town is liable for negligence in the conduct of commercial enterprises voluntarily undertaken for profit or to benefit its corporate interests, although a public need is ultimately subserved." *Sloper* v. *Quincy,* 301 Mass. 20, 23–24, and cases cited. *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300. In *Orlando* v. *Brockton,* 295 Mass. 205, at page 207–208, in stating the rule relative to nonliability for negligence the court said that the functions to which it applied were those ". . . imposed or permitted by the Legislature from which no special corporate advantage, pecuniary profit or enforced contribution from individuals particularly benefited, results."

It is clear that the collection of refuse is not imposed upon municipalities by mandate but is permissive. But, whether such a service is entered into by a city or town by virtue of legislative mandate or permission, in either case the service constitutes a public function, in the gratuitous exercise of which it is clear that the municipality is not liable for the tortious acts of its servants. *Bolster* v. *Lawrence,* 225 Mass. 387, 389. If, however, such a public function is entered into permissively, that is voluntarily, and it is a commercial enterprise, we are of opinion that in its conduct a municipality is liable for the tortious acts of its servants. *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300. The general rule of nonliability on the part of a municipality for the tortious acts of its servants in the performance of strictly public functions is confined to functions from which "no special corporate advantage, pecuniary profit or enforced contribution from individuals particularly benefited, results." *Orlando* v. *Brockton,* 295 Mass. 205, 207–208, and cases cited. Thus it would appear that even functions which, in certain circumstances, may be strictly public within the general rule as to nonliability for the tortious acts of the

servants of a municipality in their conduct, may, in other circumstances, be transformed into *quasi* commercial enterprises, see *Bolster* v. *Lawrence*, 225 Mass. 387, 391, and this even though a public need is ultimately subserved. *Sloper* v. *Quincy*, 301 Mass. 20, 24. Obviously in the present case the service in which the operator was engaged as the servant of the defendant was one where contribution was exacted, by way of compensation, from individuals particularly benefited. In the instant case, operations of the defendant in collecting refuse from mercantile and manufacturing concerns were not general. It rendered this service for pay in but five of the ten districts, in all of which it carried on the general service of collecting domestic refuse gratuitously. In these five districts similar services were also performed for such establishments by private contractors at a rate less than that charged by the defendant. It is manifest that such services performed by private contractors constituted commercial enterprises, and it is difficult in all the circumstances of the present case to reach a conclusion that like services performed by the city, not generally but only in particular locations in the city at a greater cost to those served, were not of the same character.

As before noted, the receipts from this service were $22,253.66, and the total cost of operation of the sanitary division for the year involved was $1,238,607.28, but the total cost of removing both domestic and commercial waste in the five districts where commercial waste was collected by the defendant was $342,834.40. It does not appear in the record what the cost was of removing the commercial refuse alone. It is a fair inference that the defendant did not commit itself voluntarily to the performance of services in certain sections of the city for pay, which services in other sections were and continued to be performed by private contractors at a less price, unless it was of opinion that thereby it was obtaining an advantage for its corporate benefit.

The defendant has argued, however, that the case comes "within the rule that where a municipal corporation is engaged in an enterprise conducted for the general welfare

from which it receives an insignificant incidental revenue but from which it received no profit or advantage the city is engaged in a governmental enterprise and there is no liability." This rule, however, which has been stated in substance in the many cases cited by the defendant, including the case of *Orlando* v. *Brockton*, 295 Mass. 205, has no application to cases where the service is not one undertaken for the benefit of all the inhabitants or residents of the municipality, nor to those cases where it must be said that the municipality voluntarily enters upon a permitted function for its profit or corporate benefit. In some of the cases cited by the defendant, where an insignificant return was held not to render the services commercial and within the exception to the general rule, the service was one performed for members of the public generally, as in *Benton* v. *Boston City Hospital*, 140 Mass. 13, *Kelley* v. *Boston*, 186 Mass. 165, *Mahoney* v. *Boston*, 171 Mass. 427, *Bartol* v. *Boston*, 259 Mass. 323, and in *Taggart* v. *Fall River*, 170 Mass. 325, where the work involved enured to the general public benefit. In other cases cited it does not appear that the municipality derived any revenue from the work involved. See *Tindley* v. *Salem*, 137 Mass. 171; *Bolster* v. *Lawrence*, 225 Mass. 387. In the latter case, although the city was authorized "to establish rates for the use of . . . [the] baths" in which the plaintiff was injured, there was no averment that any charge for their use was in fact made, and the real decision is to the effect that the mere possibility that a charge might be made was not enough to transform its main features as actually conducted (that is, so far as appeared, gratuitously) into a *quasi* commercial venture. Likewise in *Curran* v. *Boston*, 151 Mass. 505, also cited by the defendant, it does not appear that the city derived any revenue from the work in which the injured person was engaged at the direction of the defendant. Moreover, in all the circumstances of the present case we are not prepared to say that the receipts by the defendant for the particular service in which the operator was engaged were insignificant. While the question as to the character of the work in which the operator was engaged at the time of the accident is not free from

difficulty, on the whole we are of opinion that it constituted a commercial enterprise in which the defendant voluntarily engaged, even if not for profit (see *Davies* v. *Boston*, 190 Mass. 194, 197), at least for its corporate benefit, and that therefore the defendant is liable for the negligence of the operator which resulted in the plaintiff's injury.

It follows that there was no error in the rulings of the trial judge. Accordingly, the order of the Appellate Division is reversed and instead thereof an order is to be entered dismissing the report.

*So ordered.*