RICHARD T. LEARY, administrator, & another vs. CITY OF
BOSTON.

Suffolk. April 8, 1985. — August 16, 1985.

Present: GRANT, KAPLAN, & DREBEN, JJ.

*Governmental Immunity. Nuisance. Municipal Corporations*, Liability for
nuisance, Liability for tort. *Parks and Parkways*.

In an action against the city of Boston arising from the accidental drowning
of the plaintiff's eight year old son in a pond located within a public
park operated by the city, the judge erred in submitting the question of
negligence to the jury on the theory that the city's operation of the park
was a commercial venture, where the only evidence of commercial
activity was the city's renting out of a boathouse in the park for use as
a refreshment and boat rental concession at an annual fee of $900.
[606-608]

The city of Boston was not shown liable on the ground of nuisance in an
action arising from the accidental drowning of the plaintiff's eight year
old son in a pond within a public park operated by the city, where the
alleged nuisance, the pond, was neither dangerous to persons or property
beyond the limits of the park, nor an infringement upon a long-standing
public right, such as the right to travel on a public highway or navigable
stream. [608-612]

TORT. Writ in the Superior Court dated August 6, 1973.
The case was tried before *Andrew R. Linscott*, J.

*Howard P. Speicher*, Special Assistant Corporation Counsel,
for the defendant.

*George A. McLaughlin, Jr.*, for the plaintiff.

DREBEN, J.  On August 25, 1972, a tragic accident occurred
in Jamaica Pond Park. Contrary to their parents' instructions,
eight year old Richard T. Leary, Jr., and two friends, aged
six and eight, entered the park. Crossing a grassy area, they
went to the shore of the pond, took off their shoes and socks
and waded into the pond to chase fish. Despite warnings from
the other two, Richard wanted to show his friends that he could
swim. He turned on his back and, shortly thereafter, disap-

peared. The children screamed. Learning (through a third person) of their frantic cries, a sailing instructor tried to rescue Richard. After several dives, he found the boy in eight feet of water. Richard was never revived, lived in a semi-comatose state for seven years, and died on September 18, 1979.

In this action brought in counts of negligence[1] and nuisance by Richard's father (as administrator on acount of Richard's injuries and individually to recover the extensive medical bills he had incurred), a jury on special questions found the city fifty-eight percent negligent and Richard forty-two percent negligent. The jury also answered the following question in the affirmative: "Was the City of Boston committing a public nuisance with respect to Richard T. Leary, Jr., at the time and place of this incident?" We are constrained to reverse.

1. As the accident occurred before August 16, 1977, the plaintiffs' rights to recovery are governed by the law in effect prior to the enactment of the present G. L. c. 258, the Massachusetts Tort Claims Act. *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979). The critical question is whether at the time of injury the city of Boston was operating the park "for the common good of all without the element of special corporate benefit or pecuniary profit. *Bolster* v. *Lawrence*, 225 Mass. 387, 390 [1917]. If it [was], there is no liability; if it [was] not, there may be liability." *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 621 (1973). *Whitney* v. *Worcester*, 373 Mass. 208, 214-215 (1977). The judge ruled as matter of law[2] that the city "was engaged in a proprietary or, as it is sometimes called, a commercial enterprise."

Although the test may be "vague", *Miles Plumbing & Heating Co.* v. *Brockton*, 17 Mass. App. Ct. 33, 35 (1983), the uncontested facts in this case do not, we think, permit a conclusion that the city was engaged in a commercial venture.

---

[1] The negligence claimed was a failure to post adequate warning signs, a failure to patrol and the maintenance of a dangerous condition (dangerous increase in water depth ten to fifteen feet from shore).

[2] At trial, counsel agreed that the question was for the judge, rather than the jury, to determine. They do not now urge otherwise.

Jamaica Pond Park was in 1972 operated and maintained as a public park. Such use "for the comfort and recreation of the public" would traditionally be considered a governmental rather than a proprietary enterprise. *Steele* v. *Boston*, 128 Mass. 583, 584 (1880). *Clark* v. *Waltham*, 128 Mass. 567, 569-570 (1880). At the time of the accident, the city did not charge admission, did not charge a fee for fishing, and provided a free sailing program for the city's youngsters. The cost to the city in 1972 of maintaining the park and paying the instructors and other park employees was in excess of $10,000.

The only evidence of any commercial activity in 1972 was the city's renting out a boathouse for use as a refreshment and boat rental concession at an annual fee of $900. In the circumstances, this rental was insufficient to transform the maintenance of the park or the pond into a commercial undertaking. First, the statute authorizing such rentals, St. 1897, c. 365 (granting of concessions "for the accommodation of the public"), suggests that even the purpose of the concession was public.[3] Second, the boys' presence at the pond was unconnected to any of the activities conducted at the boathouse. See *Clark* v. *Waltham*, 128 Mass. at 570; *Kelley* v. *Boston*, 186 Mass. 165, 167 (1904). Third, and perhaps most important, the incidental operations of the concessionaire and the income from the boathouse lease were trivial in comparison with the costs and activities at the park. We hold, therefore, that the rental of the boathouse did not convert a plainly predominantly public function into one undertaken for corporate advantage. *Bolster* v. *Lawrence*, 225 Mass. 387, 391-392 (1917), and cases cited. *Orlando* v. *Brockton*, 295 Mass. 205, 209 (1936). *Beakey* v. *Billerica*, 324 Mass. 290, 293 (1949). Compare *Dickinson* v. *Boston*, 188 Mass. 595, 599 (1905); *Baumgardner* v. *Boston*, 304 Mass. 100, 107 (1939).

---

[3] This is true even though G. L. c. 45, § 5A, required the concession to be awarded to the highest responsible bidder.

As the evidence did not support the judge's conclusion that the city was engaged in a proprietary function in operating the park, it was error to submit the question of negligence to the jury. Prior to 1977 a city could not be held liable for negligent performance of its governmental activities.

2. *Nuisance*. In "uneasy relation" to the rules of municipal immunity, *Miles Plumbing & Heating Co.* v. *Brockton*, 17 Mass. App. Ct. at 37, is the doctrine that a municipality owning or controlling land is liable as an ordinary person if it creates or permits a private nuisance. *Kurtigian* v. *Worcester*, 348 Mass. 284, 288 (1965). *Morash & Sons* v. *Commonwealth*, 363 Mass. at 616, and cases cited. Additionally, the concept of public nuisance must be addressed. See *Alholm* v. *Wareham*, 371 Mass. 621, 626 n.3 (1976), where the Supreme Judicial Court, while not deciding the question, "discern[ed] no valid reason why municipalities should not be liable for injuries resulting from their maintenance of public nuisances."

We approach the subject gingerly. Quite apart from any difficulties of definition,[4] the cases of *Vaughan* v. *Commonwealth*, 377 Mass. at 915, and *Green* v. *Commonwealth*, 13 Mass. App. Ct. 524, 529 (1982), caution against a change of rule on account of incidents arising prior to the effective date of the present G. L. c. 258.

---

[4] Prosser has said of the application of public nuisance theories in the context of municipal immunity: "Since liability for nuisance rests in many cases upon nothing more than negligence, for which in theory the municipality is not liable, the result has been a rather hopeless attempt to distinguish between the two, which has added confusion to the law of both nuisance and municipal corporations. It seems reasonable to say that there is no sound argument behind the distinction itself, and that resort to the more or less undefined concept of nuisance is merely one method by which the courts have retreated from municipal nonliability." Prosser, Torts § 131, at 983 (4th ed. 1971). See Prosser & Keeton, Torts § 131, at 1055 (5th ed. 1984).

As to the perhaps less difficult concept of "private nuisance," the Supreme Judicial Court has noted that "[t]he term 'nuisance' as a ground of liability usually results in confusion and frequently is a method of avoiding precision in analysis." *Delano* v. *Mother's Super Market, Inc.*, 340 Mass. 293, 297 (1960).

Before proceeding to public nuisance, it may be useful to examine first the theory on which a municipality or the Commonwealth has been held liable for a private nuisance. In describing the tort, the court in *Morash & Sons* v. *Commonwealth*, 363 Mass. at 616, stated: "Where a municipality is the owner of or in control of real estate and creates or permits a private nuisance to the *real property of another*, it is liable in a common law action just as a natural person would be" (emphasis supplied). While the injury need not be to real estate, but may also be to the person, *Kurtigian* v. *Worcester*, 348 Mass. at 285, or to personal property, see *H. Sacks & Sons* v. *Metropolitan Dist. Commn., ante* 45, 48 (1985), further appellate review granted, 395 Mass. 1102 (1985), the gravamen of private nuisance is injury to property or persons *outside* the public place controlled by the municipality.[5]

When we turn to "public nuisance", the concept is less circumscribed and, in its broadest statement, seems unconnected to place or property. The Restatement (Second) of Torts § 821B (1979) defines public nuisance simply as an "unreasonable interference with a right common to the general public." Comment b, set out in the margin,[6] however, provides useful

---

[5] Even as to such cases, we have said, "Where a plaintiff's true grievance was negligent construction or maintenance of a highway drainage system, the case could not be improved by phrasing the claim as one in nuisance." *Miles Plumbing & Heating Co.* v. *Brockton*, 17 Mass. App. Ct. at 37 n.6, citing *Lemasurier* v. *Pepperell*, 10 Mass. App. Ct. 96, 97 (1980), a case in which there was damage to the plaintiff's land.

[6] "b. Common law public nuisances. At common law public nuisance came to cover a large, miscellaneous and diversified group of minor criminal offenses, all of which involved some interference with the interests of the community at large — interests that were recognized as rights of the general public entitled to protection. Thus public nuisances included interference with the public health, as in the case of keeping diseased animals or the maintenance of a pond breeding malarial mosquitoes; with the public safety, as in the case of the storage of explosives in the midst of a city or the shooting of fireworks in the public streets; with the public morals, as in the case of houses of prostitution or indecent exhibitions; with the public peace, as by loud and disturbing noises; with the public comfort, as in the case of widely disseminated bad odors, dust and smoke; with the public convenience, as by the obstruction of a public highway or a navigable stream; and with a wide variety of other miscellaneous public rights of a

guidelines as to what is covered by traditional doctrine. See also *Wesson* v. *Washburn Iron Co.*, 13 Allen 95, 101 (1866). Two well-developed categories emerge. One involves highways and navigable streams. In such places the public traditionally has been held to have rights of safe passage, and a municipality will be held liable, usually under statutory authority, for any impediment to the right of travel. Cases in the other category suggest that public nuisance has some hint of the elements of private nuisance and usually involves an interference to members of the public beyond the limits of a particular property. Thus, the keeping of diseased animals or the maintenance of a pond breeding malarial mosquitoes adversely affects members of the public whether or not they are on the subject property.

If we look at the two cases in which the Supreme Judicial Court discussed public nuisance in the context of possible municipal liability, both fell within the traditional concepts covered by comment b. In *Alholm* v. *Wareham*, 371 Mass. at 623, the "plaintiffs alleged that the town had maintained a public nuisance in the form of a town dump on property adjoining the public highway, the smoke from which severely impaired the visibility of travelers on the highway." Similarly, in *Huff* v. *Holyoke*, 386 Mass. 582, 583-584, 585 (1982), the condition complained of was that the plaintiff's intestate, a traveler upon a public way, struck a chain that the municipality had negligently stretched across the road.

While the limits of traditional public nuisance cases are not easily defined, they do not encompass the case at bar, where the alleged public nuisance neither was dangerous to persons or property beyond the limits of the park nor infringed upon a long standing public right, such as travel on a public highway or on a navigable stream. Here, as in *Molinari* v. *Boston*, 333

---

similar kind. In each of these instances the interference with the public right was so unreasonable that it was held to constitute a criminal offense. For the same reason it also constituted a tort. Many states no longer recognize common law crimes, treating the criminal law as entirely statutory. But the common law tort of public nuisance still exists, and the traditional basis for determining what is a public nuisance may still be applicable."

.

Mass. 394, 396 (1955), the claim seems but a means to circumvent the ordinary rule of municipal immunity. In *Molinari*, a child who complained of extremely hot and dangerous steam radiators and pipes in a public school gained "no advantage" by asserting the existence of a nuisance. The municipality remained immune. The court noted that the claim did not come within the "somewhat restricted" class illustrated by *Towner* v. *Melrose*, 305 Mass. 165, 168 (1940). In *Towner* v. *Melrose*, a municipality was held liable for permitting a private nuisance "to the real property of another *outside* the limits of the public work" (emphasis supplied). See also *Hill* v. *Boston*, 122 Mass. 344, 358 (1877).

Other jurisdictions have also declined to find liability because of allegedly dangerous conditions on municipal premises other than highways or navigable streams. "The alleged nuisance that exists solely within the bounds of the property . . . and causes injury or damage to a person rightfully thereon, . . . is exactly that which is protected by the doctrine of sovereign immunity." *Iseminger* v. *Black Hawk County*, 175 N.W. 2d 374, 379-380 (Iowa 1970) (death by drowning in a gravel pool in a public park). *Houston* v. *George*, 479 S.W. 2d 257, 258-259 (Tex. 1972) (water in garbage dump). The claim of nuisance in such cases is merely an attempt to circumvent the doctrine of immunity by giving the negligent act another name. See, e.g., *Baker* v. *Lexington*, 310 S.W. 2d 555 (Ky. 1958) (wire across path in park); *Kellam* v. *School Bd. of Norfolk*, 202 Va. 252, 258-259 (1960) (aisle of school auditorium).

We recognize that other courts have found liability on nuisance principles because of defective conditions on municipal premises. Some have done so on the theory of attractive nuisance,[7] e.g. *Rosario* v. *Lansing*, 403 Mich. 124, 140-141 (1978) (also allows recovery on ground of nuisance). As indicated in *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177,

---

[7] We note that, in general, the "attractive nuisance" doctrine does not extend to ponds having natural characteristics and no hidden dangers. See e.g. *Peers* v. *Pierre*, 336 Ill. App. 134, 137-139 (1948); *Ochampaugh* v. *Seattle*, 91 Wash. 2d 514, 526 (1979); Restatement (Second) of Torts § 339 comment j, illus. 6, see also comment p (1965).

182 (1979), that doctrine is but a part of the law of negligence and not nuisance at all. See Prosser, Torts § 131, at 983 n.30 (4th ed. 1971). See also, e.g., *Burris* v. *New Orleans*, 100 So. 2d 550 (La. Ct. App. 1958); *Metropolitan Govt. of Nashville & Davidson County* v. *Counts*, 541 S.W. 2d 133, 137-139 (Tenn. 1976), cases which recognize that the doctrine of attractive nuisance is just part of negligence law and does not constitute an exception to the general rule of municipal immunity.

Some courts have applied the theory of public nuisance to the right to be safely on public property, including parks. See, e.g., *Johnson* v. *Tennessean Newspaper, Inc.*, 192 Tenn. 287, 292-293, 296 (1951) (concealed holes in grass in park); *Hoffman* v. *Bristol*, 113 Conn. 386, 392-393 (1931) (diving board above shallow water in a park).

We decline, however, to extend the concept of public nuisance to the case at bar. To do so would conflict with established municipal law, see *Molinari* v. *Boston*, 333 Mass. at 396, and would create a judicial exception to the doctrine of municipal immunity prior to 1977, contrary to the policy expressed in the *Vaughan* and *Green* cases discussed and cited earlier.

3. In view of our decision that the city is not liable under theories of negligence or nuisance, we need not reach the other issues briefed by the parties. We do not consider and do not intend by our decision to suggest that liability would exist under current law.

The judgment is reversed, and judgment for the defendant is to be entered on the docket of the Superior Court.

*So ordered.*