GREG BELANGER & others[1] *vs.* COMMONWEALTH & another.[2]

No. 95-P-758.

Essex. October 8, 1996. - November 19, 1996.

Present: WARNER, C.J., LAURENCE, & FLANNERY, JJ.

*Nuisance. Common Law. Massachusetts Clean Waters Act. Commonwealth,* Liability for nuisance. *Water. Administrative Law,* Exhaustion of remedies.

The statutory remedy provided by G. L. c. 21, § 46A, to obtain judicial review of decisions of the Department of Environmental Protection (DEP), is not the exclusive remedy for persons aggrieved by an order of the DEP and such persons are entitled to pursue any applicable common law claims for redress. [670-671]

An action alleging nuisance brought against the Commonwealth, for the refusal of the Department of Environmental Protection (DEP) to issue a certificate and permit to a municipality that would allow the construction and maintenance of water control structures to abate flooding on the plaintiffs' land, was premature where the actions of the DEP did not permanently foreclose future State approval of an alternate project that could ameliorate the flooding condition and where the municipality in question had not fully pursued all administrative remedies to propose alternative projects for approval. [671-675]

CIVIL ACTION commenced in the Superior Court Department on August 24, 1994.

The case was heard by *Peter F. Brady,* J., on a motion for summary judgment, and entry of separate and final judgment was ordered by *Thayer Fremont-Smith,* J.

[1]Dina Belanger, Brian Smiar, Donna Smiar, Robert Leblanc, Paul Valutkevich, Deborah Valutkevich, Robert Eaton, Carol Eaton, Calvin Eaton, Claire Eaton, Harold Potter, Ruth Potter, Dallas W. Haines III, Linda M. Haines, John Suroweic, Alena Suroweic, Linda Perocchi, and Alphonse Sevigny.

[2]The town of Amesbury. The town is not involved in this appeal, which only concerns the entry of separate and final judgment as to the Commonwealth.

*Dallas W. Haines, III*, for the plaintiffs.

*Frederick D. Augenstern*, Assistant Attorney General, for the Commonwealth.

WARNER, C.J. The plaintiffs are the owners of riverfront property adjacent to the Powwow River in the town of Amesbury (town). They brought this common law nuisance action against the town and the Commonwealth, alleging that their land was artificially flooded as a result of the town's failure to adjust, remove, or replace a dam-like structure on the river, known as the Newtown Road weir, and to maintain and control properly the Lake Gardner Dam and several other, less significant water control structures along the river. They claim that the conditions created by the town constitute a nuisance.

The plaintiffs also claim that the Commonwealth, acting through its Department of Environmental Protection (DEP), has perpetuated and exacerbated the flooding by refusing to issue to the town a water quality certification and a waterways permit, both of which are required before the proposed maintenance, adjustment, or replacement can proceed. They maintain that the DEP has indicated that it will never issue the required permits, and argue that the Commonwealth is, therefore, liable in nuisance.

The Commonwealth moved to dismiss the plaintiffs' claim pursuant to Mass.R.Civ.P. 12(b)(6) and 12(b)(9), 365 Mass. 755 (1974). A Superior Court judge granted the Commonwealth's motion, treating it as a motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974). He ruled that the claim was barred by the plaintiffs' failure to comply with a thirty-day time limit imposed by G. L. c. 21, § 46A, a provision of the Massachusetts Clean Waters Act that affords a procedure for contesting the denial of a water quality certification or a waterways permit. The judge also concluded that "the acts of the Commonwealth could not constitute a nuisance as to the Commonwealth."

On appeal, the plaintiffs maintain that G. L. c. 21, § 46A, is by no means their exclusive remedy and that their common law nuisance claim is independently viable. They further contend that because they chose to pursue their claim against the Commonwealth under a common law theory of liability rather than by directly contesting the permit denials in accordance with G. L. c. 21, § 46A, the filing requirements do not affect this action.

The Commonwealth maintains that the statute is, in fact, the exclusive remedy by which anyone aggrieved by a decision of the DEP may challenge that decision, and that the plaintiffs' nuisance action is therefore barred. It argues that the plaintiffs cannot circumvent the requirements of the statute simply by cloaking their claim in the common law. Finally, the Commonwealth argues that it cannot be liable to the plaintiffs in any event because it merely regulates the town's compliance with State environmental laws and has no direct or indirect control over the conditions that allegedly constitute the nuisance.[3] For the reasons discussed below, we vacate the order of the Superior Court granting summary judgment in favor of the defendants.

1. *Exclusivity of the plaintiffs' remedy.* In granting summary judgment, the trial judge ruled that the suit was not timely brought pursuant to G. L. c. 21, § 46A. The plaintiffs' complaint, however, was not brought under the statute but alleged common law nuisance. Thus, in reaching his decision the judge apparently accepted the Commonwealth's argument that the statute provides the exclusive remedy for anyone wishing to challenge a DEP permit denial. Accordingly, before we address the merits of the plaintiffs' common law claim, we must determine whether the availability of a statu-

---

[3]The plaintiffs concede that the Commonwealth did not create the alleged nuisance of which they complain. They maintain, however, that the DEP's refusal to allow the town to abate the flooding conditions has perpetuated the problem to such an extent that the Commonwealth, too, is liable in nuisance.

"A private nuisance is actionable when a property owner creates, permits, or maintains a condition . . . that causes a substantial and unreasonable interference with the use and enjoyment of the property of another." *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987). Nolan & Sartorio, Tort Law § 447 (2d ed. 1989). In order to be liable in nuisance, however, it is not necessary for an individual to own the property on which the objectionable condition is maintained. *Kurtigian* v. *Worcester*, 348 Mass. 284, 285 (1965). Rather, "liability for damage . . . turns upon whether a defendant [controls the property], either through ownership or otherwise." *Ibid.* Nolan & Sartorio, *supra* § 459.

Private nuisance actions against municipalities or the Commonwealth are governed by the same principles as those against private individuals. See *Leary* v. *Boston*, 20 Mass. App. Ct. 605, 608 (1985), and cases cited; Nolan & Sartorio, *supra* § 459. Thus, "the Commonwealth [is liable in nuisance] if it creates or maintains a private nuisance which causes injury to the real property of another." *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 614 (1973).

tory remedy precludes them from pursuing their rights under a common law theory of nuisance.

The Massachusetts Clean Waters Act, G. L. c. 21, §§ 26-53, confers broad authority on the DEP to regulate water quality within the Commonwealth. See G. L. c. 21, § 27. The question with which we are concerned is whether the Legislature, in enacting this comprehensive statutory scheme, intended to eliminate all preexisting common law causes of action.

General Laws c. 21, § 46A, as inserted by St. 1973, c. 546, § 13, provides, in part, that "[a]ny person aggrieved by an order, permit determination or other action of the director . . . may obtain judicial review by filing an application for review in the superior court within thirty days after receipt of notice of the final decision of the [DEP]." Nothing in the statute specifically provides that it shall be the exclusive remedy for anyone aggrieved by a DEP decision. Moreover, the Supreme Judicial Court has determined that the Legislature intended the "Massachusetts Clean Waters Act [to] complement, rather than replace, common law rules of liability." *Nassar* v. *Commonwealth*, 394 Mass. 767, 773 (1985). Accordingly, such bases of liability remain viable even after its enactment. *Ibid*.

We hold that G. L. c. 21, § 46A, is not the exclusive remedy available to the plaintiffs in this case, and that they are therefore entitled to pursue any existing common law claim they may have against the Commonwealth. Because the present nuisance action is premature, however, we do not reach the merits of the claim.

2. *Prematurity of the plaintiffs' claim.* The plaintiffs base their claim against the Commonwealth upon their allegation that, by denying the town the water quality certification and waterways permit necessary to complete the proposed Newtown Road weir project and by further refusing to permit the town to lower the water level of Lake Gardner, the DEP has perpetuated and exacerbated the flooding of their land. They further maintain that the DEP's actions to date constitute a permanent foreclosure of any possibility that the town will be permitted to abate the flooding in the future.

In support of their claim, the plaintiffs cite two DEP docu-

ments.[4] First, they refer to a written "Water Quality Certificate Denial" dated May 27, 1994, in which the DEP denied the town's request to remove the existing Newtown Road weir and construct a new weir approximately 1500 feet upstream. The plaintiffs also refer to a "Superseding Order of Conditions" issued by the DEP on November 24, 1993, in which the town was denied permission to lower the levels of Lake Gardner and several nearby bodies of water.

In an attempt to clarify the rather confusing posture of this case stemming from a series of related actions, we begin our analysis with some general background information. Prior to the commencement of this action, a consent judgment entered in the Superior Court in another case involving Dallas Haines, one of the plaintiffs in this case, and the town. See Haines *vs.* Amesbury, Essex Superior Court C.A. 86-2729 (1991). The judgment provided, among other things, that the town would remove and replace the Newtown Road weir. A new weir would be built upstream from the present one, adjacent to the town's water treatment facility. Presumably, the proposed project would have alleviated the flooding conditions which form the basis of the present action.[5]

Pursuant to the consent judgment, the town applied for the necessary permits, including water quality certification pursuant to G. L. c. 21, §§ 26-53, 314 Code Mass. Regs. § 4.00 (1990), 314 Code Mass. Regs. § 9.01(2) (1986), and § 401 of the Federal Clean Water Act (33 U.S.C. § 1341), under which the DEP administers State and Federal water pollution protection programs, and a waterways permit pursuant to 310 Code Mass. Regs. § 9.33 (1990). During the environmental review process required by G. L. c. 30, §§ 61-62H, the Massachusetts Environmental Policy Act (MEPA), a water quality review was conducted. The review included the preparation of an environmental impact report, which concluded that the removal and replacement of the weir would have a

---

[4]At oral argument, counsel for the plaintiffs referred to specific language contained in a third document, a final order of conditions issued by the DEP, providing that "[t]his condition shall remain in perpetuity." This order was never made part of the record in this case and is therefore not properly before us.

[5]The consent judgment was subsequently vacated by a judge in the Superior Court, and this court affirmed the order. See *Haines* v. *Amesbury*, 40 Mass. App. Ct. 1122 (1996).

significant negative impact on the Powwow River and its surrounding wetlands.[6]

On May 27, 1994, the DEP issued a written denial of the requested water quality certificate, citing the great potential for environmental damage.[7] Because water quality certification is a prerequisite to the issuance of a permit for any activity that might pollute State waters, the DEP also denied the town's request for a waterways permit. The plaintiffs contend that the denial of the water quality certification and the waterways permit constitute a permanent refusal by the Commonwealth to permit the town to address the flooding problems associated with the Newtown Road weir. We disagree.

When read in its entirety, we think it clear that the DEP denial pertains only to the specific proposal presented by the town — the complete removal and replacement of the weir. Indeed, the language of the denial seems to suggest that the town reapply for the required permits pursuant to one of several alternative, less environmentally damaging proposals. Specifically, the denial states that "several of the eight proposed alternatives have been shown to result in reduced ecological impacts compared to the proposed action, but . . . the town continues to pursue only the option [of complete removal and reconstruction.]"

Although we have not been made privy to any of the "eight proposed alternatives," we assume they were discussed in the environmental impact report. Moreover, there is nothing in the record to indicate either that the town has submitted an alternative proposal to the DEP, or that such a proposal would be denied. In any event, we need not speculate as to what might happen if the town were to submit another more environmentally friendly proposal for consideration. It is sufficient to say that, even at this late date, it still appears possible for the town to obtain approval for a revised project that

---

[6]Although the report is not before us, the plaintiffs do not contest its existence or stated content.

[7]Plaintiff Haines and thirteen others challenged the denial of the certification and the permit under G. L. c. 21, § 46A, in Smiar *vs.* Amesbury, Essex Superior Court C.A. 94-1327C (1995). The denial was affirmed, and judgment entered in favor of the Commonwealth.

would result in the elimination of the flooding of plaintiffs' land.[8]

The plaintiffs' second argument concerns the superseding order of conditions issued by the DEP in response to the town's application to adjust water levels seasonally in Lake Gardner, Lake Attitash, Tuxbury Pond, and Clark's Pond. The application was allowed with respect to Lake Attitash but denied as to Lake Gardner and the ponds. The plaintiffs view the denial as further evidence of the DEP's refusal to allow the town to regulate the river and its surrounding lakes and waterways so as to eliminate the flooding of their land.

We have reviewed the superseding order of conditions in its entirety and do not find the plaintiffs' argument persuasive. Indeed, the order cited by the plaintiffs for the denial of permission to lower the level of Lake Gardner also contains an approval of a similar proposal to regulate Lake Attitash. Moreover, the order specifically predicates denial of the Lake Gardner proposal upon a lack of watershed data regarding the extent and duration of the proposed draw-down. In this regard, the order invites the town to file another notice of intent in order to obtain approval for the Lake Gardner project, and suggests that the new notice should include certain watershed data necessary to evaluate the environmental impact of the project, including "information on purpose, need, basic bathymetry, elevations, and duration." Finally, in the order the DEP strongly recommends that the town "prepare[] a Notice of Intent addressing [over-all] watershed management [to provide the town's] DPW director [with] some autonomy in manipulating water levels in the various reservoirs and [in] the Powwow River for the purposes of maintaining an adequate water supply and for flood control." We do not read these provisions as coming from an agency bent on frustrating the diligent efforts of the town to abate the serious flooding problems of its residents.

There is nothing in the record to indicate that the town is prevented from reapplying to DEP, under a revised proposal, for the permits and water certification that were previously denied and, similarly, nothing to preclude it from filing a more complete notice of intent with regard to the regulation

[8]We express no opinion as to whether the town is legally obligated to seek DEP permission to proceed with any of the less ecologically damaging options available at the present time.

of water levels in Lake Gardner. The plaintiffs have failed to demonstrate that the Commonwealth, through its DEP, is unwilling to permit the town to undertake the adjustments and repairs necessary to abate the flooding of their land. What is apparent is that the town has failed to exhaust its administrative alternatives for obtaining approval of the work necessary to eliminate the flooding along the Powwow River. Accordingly, the plaintiffs' claim against the Commonwealth is premature.

We realize that the case before us does not involve a situation where the plaintiffs have failed to exhaust existing administrative remedies before seeking a judicial remedy. Although it is the defendant, the town, that has neglected to pursue the proper administrative course, we think some of the principles behind the exhaustion doctrine are applicable here, and support our holding that this action is premature.

The exhaustion doctrine provides that, as a general rule, all available "administrative remedies should be exhausted before resort to the courts." *J.& J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 539 (1976). Application of the doctrine serves to "preclude judicial consideration of a question while there remains any possibility of further administrative action." *Id.* at 540, quoting from 2F Cooper, State Administrative Law 572 (1965). Even where there exists an alternate judicial remedy, any available administrative action that "may afford . . . some relief, or may affect the scope or character of judicial relief" should be exhausted prior to independent action in the courts. *Nelson* v. *Blue Shield of Mass., Inc.,* 377 Mass. 746, 752 (1979).

Here, exhaustion of the remaining administrative procedures available to the town may result in the issuance of the necessary permits and the elimination of the plaintiffs' problem. Accordingly, it would be premature for us to impose liability upon the Commonwealth at this time, on the basis of the two specific proposals that have heretofore been rejected by DEP.

The plaintiffs' claim against the Commonwealth should have been dismissed without prejudice. The judge's order granting summary judgment in favor of the Commonwealth is therefore vacated, and the case is remanded for the entry of an order dismissing the complaint without prejudice.

*So ordered.*